Hillsborough, } No. 3832.
Jan. 3, 1950. }

STATE *v.* FRANK LACOSHUS *& a.*

*William L. Phinney*, Attorney-General, *William H. Craig*, County Solicitor, and *Warren E. Waters* (*Mr. Phinney* orally), for the State.

*Robert J. Doyle* (by brief and orally), for the defendants.

JOHNSTON, C. J. In view of the fact that the defendant Locoshus was not present at the time the girl was taken from the school grounds in Manchester and did not join her and Daigle until evening of that day of August 9 in Boston, the charges against the two defendants will be treated separately. The case of Henry Daigle will be considered first.

In *Petition of Morin,* 95 N. H. 518, this court held that Elaine Morin was legally committed to the custody of the State Industrial School. No claim is made that the consent of those in charge of the school was obtained for her leaving on the morning of August 9, or that they even knew of it at the time. It positively appears otherwise.

The phrase "any minor child" in the statute means any child under twenty-one years of age. *People* v. *Edenburg,* 88 Cal. App. 558, 566.

Although the elements of the crime charged must be proven, the fact that the child went willingly is no defense. "The consent of the person so taken is, as a rule, immaterial, since, usually, only the parent or guardian can give consent." 2 Burdick, Law of Crime, 61. *State* v. *Suennen,* 36 Idaho 219. "The consent of a minor child is no defense to the charge of kidnapping if the parent or guardian does not consent." *Id.,* 223. The crime is against the parent or guardian as well as the child.

The indictment alleges two ways in which the offense was committed, those of concealment and of inveiglement. The charge is sustained if there was evidence of the unlawful use of either. The State is not obliged to elect the method by which it will prove the commission of the offense. *State* v. *Metcalf,* 129 Or. 577, 593.

There was evidence from which it could be found that the girl was unlawfully concealed from her legal custodian. Without any knowledge of the school authorities, she was taken into the Buick convertible of the defendant Daigle from the grounds of the school in Manchester as she was walking from the main building to the house occupied by the superintendent. The defendant Daigle drove her away and by back roads took her quickly out of the state with the result that she was not apprehended for over a month. "But it is not necessary that the person taken be detained for any particular length of time, and it is immaterial whether the defendant intended to detain him for a few hours, or a few days, or permanently." 2 Brill, Cyclopedia Criminal Law, 1217.

The following definition of the word "concealment" as used in an

act of Congress, found in 8 Words and Phrases (Perm. *ed.*) 328, 329, is applicable to the present situation: "What amounts to a concealment, under a law of Congress prohibiting any person from harboring or concealing a fugitive from justice, etc., may depend much on the circumstances. It does not necessarily require that the subject of it be secreted in a garret, cellar, barn, or covered wagon. The highway of a remote and uncultivated country like Indiana may be a better place of concealment than the highway of many other places, and the limits of the whole country as good a place to secrete a fugitive from a distant state as any that could be imagined, especially if the fugitive have a committee of sympathizers to watch over his interests and give him warning of the approach of danger. *Van Metre* v. *Mitchell*, 28 Fed. Cas. 1036, 1040."

The jury could have found that the defendant Daigle inveigled Elaine into leaving the school. "The word 'inveigle,' in its ordinary acceptation, carries the idea of deception for the accomplishment of an evil purpose. . . . " *State* v. *Rivers*, 84 Vt. 154, 157. That the purpose was not merely to aid an inmate in escaping from the industrial school but was primarily to assist the defendants in avoiding the just penalties of the charges brought against them in the municipal court of Nashua, could well be found. At the time Lacoshus was thirty-three years of age and Daigle thirty years of age in contrast to the age of fifteen years for the girl. There had been communication with Elaine prior to the 9th and she knew that she was going to be picked up sooner or later and she had an idea that it would be on the date Daigle met her. The latter's Buick convertible was used and Elaine's brother Norris was present in the car. He was the first person to ask her to get into the car. It could be found that his presence was not for her benefit but for the purpose of a decoy. After she was in, Daigle promised that he would take care of her. She did not know where she was going, and it is a reasonable inference that she did not know before leaving New Hampshire that the matter of her marriage to Lacoshus was seriously considered.

That the defendants intended to keep or conceal Elaine from her legal custodian is apparent from the transportation of her to various cities outside the state including Atlanta, Georgia, the boarding of her in hotels and private homes, the change of her institutional clothing for other apparel, her entertainment, the spending of money upon her and the marriage to Lacoshus.

Although the defendant Lacoshus was indicted as a principal, he was not present at the alleged kidnaping of the minor child in this

state. As already stated, he did not join Daigle and Elaine until the evening of the 9th at Boston, Massachusetts. Accordingly he could not be found guilty as a principal and is entitled to be discharged.

It was held in *State* v. *Rand*, 33 N. H. 216, that the statute (now R. L., *c.* 459, *s.* 1) does not abolish the distinction between principal and accessory. "When the accessory is tried before conviction of the principal, the guilt of the principal is a material fact for the prosecution to establish, and must be proved by competent evidence." *Id.* 224. "The distinction between principals and accessories before the fact has frequently been criticized as having no logical foundation, but has been considered to be too thoroughly established to be overturned by judicial action. 'It is the general doctrine that a person indicted as principal cannot be convicted upon evidence tending merely to prove him an accessory before the fact.' *State* v. *Larkin*, 49 N. H. 36, 38; *State* v. *Buzzell*, 58 N. H. 257." *State* v. *Demos*, 81 N. H. 318, 321.

It has been more than twenty-five years since it was emphasized in the *Demos* case, *supra*, that there is little logical foundation for the distinction between principal and accessory but now, as then, any improvement in line with modern criminal procedure requires legislative rather than judicial action.

. The discharge of Lacoshus will not preclude the State, if it has sufficient evidence to warrant it, from seeking an indictment against him as an accessory, since no double jeopardy is involved. R. L., *c.* 459; *State* v. *Moore*, 93 N. H. 169; *State* v. *Buzzell*, *supra*, 258.

·*Exceptions overruled as to Daigle and sustained as to Lacoshus.*

All concurred.