451 P.2d 995

**STATE of New Mexico, Plaintiff-
Appellee,**

v.

**Elsie CLARK, Jr., Defendant-Appellant.
No. 173.**

Court of Appeals of New Mexico.
Jan. 10, 1969.
Certiorari Granted Feb. 17, 1969.

Paul Cooter, Robert E. Sabin, Atwood & Malone, Roswell, for appellant.

Boston E. Witt, Atty. Gen., David R. Sierra, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Judge.

Convicted of kidnaping, defendant appeals. The issues are: (1) The intent required under our kidnaping statute, (2) sufficiency of the evidence, (3) identification of defendant and (4) inquiry into a prior conviction.

(1) *The intent required under our kidnaping statute.*

Section 40A–4–1, N.M.S.A.1953 (repl. vol. 6, 1964) states in part:

"Kidnaping is the unlawful taking, restraining or confining of a person, by force or deception, *with intent that the victim be held for ransom, as a hostage, confined against his will, or to be held to service against the victim's will.*" (Emphasis added)

Defendant contends that the intent clause, italicized above, is ambiguous. Because of this asserted ambiguity, he contends that we should interpret it as providing for proof of only two separate intents. One is proof that the intent was to hold the victim " * . * * to service against the victim's will." The other is to combine the intent items that precede the "or" into one intent item. Under this view proof would be required of intent to hold the victim for ranson *and* hold the victim as a hostage *and* confine the victim against his will.

Defendant asserts that his position is supported by comparing the kidnaping statute with the false imprisonment statute, § 40A–4–3, N.M.S.A.1953 (repl. vol. 6, 1964), the material part of which reads:

"False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so."

One of the items set forth in the intent clause of the kidnaping statute is an intent that the victim be " * * * confined against his will, * * * *". If this is a sufficient intent under the kidnaping statute, defendant asserts it is very similar to the requisite intent for false imprisonment —an intent to confine or restrain another person without his consent. Because of this similarity, defendant argues that the District Attorney, in his discretion, could prosecute a person either for kidnaping (at least, a second degree felony) or false im-

prisonment (a fourth degree felony). It is defendant's position that such discretion in the District Attorney amounts to an unconstitutional denial of equal protection under State v. Chavez, 77 N.M. 79, 419 P.2d 456 (1966).

Defendant asserts that the Legislature did not intend that an intent to confine a person against his will would meet the requirements of the kidnaping statute; rather, that the Legislature intended that effect be given to both the kidnaping and false imprisonment statutes. See Waltom v. City of Portales, 42 N.M. 433, 81 P.2d 58 (1938). Accordingly, defendant asserts that his interpretation of the intent clause of the kidnaping statute expresses the legislative intent.

These contentions overlook an obvious distinction between kidnaping and false imprisonment. Under both the kidnaping statute, § 40A–4–1, supra, and the false imprisonment statute, § 40A–4–3, supra, there may be an intent to confine. However, under the kidnaping statute there must be force or deception. There is no such requirement in the false imprisonment statute. A comparison of the two statutes does not demonstrate that the Legislature enacted the theory urged by defendant.

It is the state's position that an intent to confine a person against his will is sufficient intent under the kidnaping statute. At oral argument it was suggested that such a position is absurd because it could result in a conviction for kidnaping under the following parts of the kidnaping statute:

"Kidnaping is the unlawful * * * confining of a person, by force or deception, with intent that the victim be * * * confined against his will, * * *"

. The suggested absurdity is based on the double use of "confinement". We fail to see the suggested absurdity. There may be an unlawful confinement, and independently thereof, there may be an intent to confine against one's will. A similar double use appears in one of our earlier kidnaping statutes. Laws 1913, ch. 41, § 2, now re-

pealed. Further, the Report of Criminal Law Study Interim Committee, 1961–62, at § 4–1, recommended enactment of a new kidnaping statute. The recommended statute included an unlawful confining but omitted intent to confine against a person's will. The "intent to confine" portion was added by the Legislature in enacting the present statute, § 40A–4–1, supra. The double use of "confinement" in the kidnaping statute fails to demonstrate that in enacting the statute, the Legislature intended the theory urged by defendant.

Defendant advances other arguments in support of his theory; these arguments are based on selected rules of statutory construction. But, where the meaning of the statute is plain, there is no room for construction. State v. Ortiz, 78 N.M. 507, 433 P.2d 92 (Ct.App.1967).

The meaning of the intent clause is plain. There are a series of intent elements; four coordinate intent elements are stated in succession. These four elements are: intent to hold the victim for ransom or intent to hold the victim as a hostage or intent to confine the victim against his will or intent to hold the victim "* * * to service * * *" against the will of the victim. Proof of any one of these four is sufficient proof of intent under § 40A–4–1, supra.

(2) *Sufficiency of the evidence.*

About 3:30 A.M., the victim went to the emergency room of a Roswell hospital for treatment. As she opened the door to the emergency room, a male pushed her against the wall, put a knife to her neck and warned her not to scream. After remaining in this position for several seconds, the victim was pushed to the south wall of the covered ambulance entrance; a distance of eight to ten feet. After remaining there about fifteen minutes, the victim was directed to a car parked in front of the hospital and told to get in it. After walking four or five steps in the direction of the car, the victim dropped her sandal. The assailant then released his grip and the victim escaped.

The criminal information charged that defendant " * * * did unlawfully take, restrain or confine * * * (the victim) by force with intent that she be held as a hostage or confined against her will * *." The jury was instructed on the basis of this charge.

Defendant contends there is an absence of evidence to show intent under § 40A–4–1, supra. This contention, however, is based on defendant's interpretation of the intent clause, which was answered in point one of this opinion. From the above evidence, the jury could determine that the assailant intended to confine the victim against her will.

Defendant also asserts that the evidence fails " * * * *to establish the confinement or taking necessary to constitute a violation* * * *." of § 40A–4–1, supra. This refers to the requirement that the defendant must unlawfully take, restrain or confine the person. The uncontradicted evidence shows that the victim was held at the point of a knife for a few seconds then taken eight to ten feet away where she was restrained or confined for approximately fifteen minutes.

Defendant contends that this conduct occurred as a " * * * mere incident to other criminal activity * * *". He argues the severity of the kidnaping statute should not be applied to conduct which may be a constituent element of a less serious crime. If defendant committed other crimes in the process of violating our kidnaping statute, this does not immunize him from prosecution under our kidnaping statute. Compare State v. Garcia, 78 N.M. 136, 429 P.2d 334 (1967).

Defendant asserts that the Legislature only intended the statute to apply to the "true" kidnap. As written, our statute is not limited to a situation where a person is held for ransom; if indeed, that is the "true" kidnap. The statute is to be given effect as written. Gonzales v. Oil, Chemical and Atomic Workers Int. U., 77 N.M. 61, 419 P.2d 257 (1966).

Defendant also asserts that his conduct is not the type of conduct proscribed by § 40A–4–1, supra. Our statute does not qualify the type of conduct proscribed by requiring the victim to be confined for a certain length of time or be taken a specified minimum distance. If there is an unlawful restraining or confining, the length of time involved in such restraint or confinement is immaterial. State v. Lacoshus, 96 N.H. 76, 70 A.2d 203 (1950). See People v. Knowles, 35 Cal.2d 175, 217 P.2d 1 (1950), cert. denied Knowles v. People of State of California, 340 U.S. 879, 71 S.Ct. 117, 95 L.Ed. 639. If there is an unlawful taking, the distance the victim is taken is not material. People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967); State v. Ayers, 198 Kan. 467, 426 P.2d 21 (1967); State v. Lowry, 263 N.C. 536, 139 S.E.2d 870 (1965).

### 3. Identification of defendant.

There is testimony placing defendant near the hospital at the time of the events under consideration. However, only the victim specifically identified defendant as the perpetrator of the crime. Defendant objected to this testimony and claims that its admission was prejudicial. He relies on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). He asserts that the courtroom identification was not accomplished by clear and convincing proof that the identification did not result from an illegal pretrial lineup.

State v. Carrothers, 79 N.M. 347, 443 P.2d 517 (Ct.App.1968) states the determination that must be made under the Wade decision. It is:

> " * * * (1) a determination that the in-court identifications are not tainted by the illegal pre-trial identification procedures, but are based upon observations of the defendant other than those made at the illegal proceedings; and (2) this determination must be established by clear and convincing evidence."

We assume that the lineup identification of defendant was illegal because de-

fendant was not represented by counsel at that lineup. However, various factors are to be considered in deciding whether the in-court identification should have been excluded. See United States v. Wade, supra. The factors are:

(a) There is no identification of a person other than the defendant.

(b) The victim twice failed to identify the defendant when she viewed him through a one-way mirror at the police station on the day of the crime. The victim explained this failure to identify—"The glass I was looking through was distorted, and I couldn't see him very well."

(c) A few hours after the crime, and prior to viewing defendant through the one-way mirror, the victim had picked defendant's picture from a group of pictures.

(d) The victim testified that the emergency entrance was "pretty well lighted", that she got a good look at her assailant and that she had no doubt that defendant was that person. Her observation of the defendant at the time of the events in question is supported by testimony concerning the details of the event. She described the knife, how she was held, how the defendant stood and the words spoken by him.

(e) The lineup took place on the day following the crime. It consisted of " * * three colored subjects and two Spanish subjects * * *". Defendant is a Negro. Without hesitancy, the victim identified defendant as the assailant.

We are of the opinion that these factors clearly and convincingly demonstrate that the in-court identification was not tainted by the alleged illegal lineup but was based on observations of the defendant other than at the lineup. It was not error to admit the in-court identification of defendant.

4. *Inquiry into a prior conviction.*

Defendant contends that the trial court erred " * * * *In inquiring into the details of defendant's prior conviction.*"

Defendant took the stand on his own behalf. On his direct examination he testified that he had entered a guilty plea to " * * * assault with intent to commit a violent felony." The trial court asked, "What felony was it?" A defense objection to the question was overruled. Defendant answered that the felony was rape.

Section 40A–3–3, N.M.S.A.1953 (repl. vol. 6, 1964) states in part:

"Assault with intent to commit a violent felony consists of any person assaulting another with intent to kill or to commit any murder, mayhem, rape, robbery or burglary."

Under § 20–2–3, N.M.S.A.1953, the defendant may be cross-examined concerning the fact of a prior conviction and the name of the particular felony or misdemeanor of which he has been convicted. The cross-examination may not go beyond the name of the particular offense. State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966).

The trial court's question did no more than elicit the name of the particular offense—assault with intent to commit rape. No details of the assault were elicited. Compare State v. Conwell, 36 N.M. 253, 13 P.2d 554 (1932).

The judgment and sentence are affirmed. It is so ordered.

SPIESS, C. J., and OMAN, J., concur.