STATE

v.

David R. COLLINS.

No. 86–488–C.A.

Supreme Court of Rhode Island.

May 24, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

Barbara Hurst, Janice M. Weisfeld, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal by the defendant, David R. Collins, arising out of his conviction of kidnaping and two counts of child molestation. The defendant asserts that the trial justice committed reversible error.

He alleges as error, inter alia, that he is entitled to judgments of acquittal on both counts of first-degree child molestation because the victim was over the age at which the use of force need not be proved and the state failed to offer such proof; that the

trial justice failed to properly charge the jury with respect to one or more of the elements of the crime of kidnaping; that the state failed to offer proof sufficient to sustain defendant's conviction of kidnaping; that the trial justice failed to suppress evidence and statements allegedly obtained in violation of the Fourth Amendment; and that the trial justice abused his discretion in failing to instruct the jury as to the proper manner of evaluation of the testimony of a child witness. The state filed a cross-appeal alleging as error a ruling by the trial justice excluding from evidence the contents of a suitcase. We affirm.

The facts are set forth below. Additional information is supplied when necessary in connection with the discussion of the various assignments of error raised by defendant. The defendant, a drifter who supported himself at least in part by welfare fraud through the use of phony identification, met an eleven-year-old boy, Bobby Smith (Bobby), in a liquor store where the boy sometimes played video games. The defendant, David R. Collins (Collins), an adult male, struck up a relationship with the boy. Collins gave Bobby money to play video games. He told the boy that if he ever had problems at home, Bobby could stay with him.

The defendant and Bobby offered sharply conflicting testimony as to whether Collins engaged in sexual activity with him. Bobby testified that the two repeatedly engaged in such activity throughout the relationship. The defendant denies all sexual activity with the boy. Collins naturally enough casts a wholly benign light upon the trek on which he took the boy, lasting some twenty-one months and three thousand miles. According to Collins, it was Bobby, at that time an eleven-year-old infant, who caused Collins to take him to Riverside, California, from Bobby's home in Long Beach, California, where they spent the night together.

In any event, for almost two years Collins and the boy moved from town to town and from state to state, using assumed names and counterfeit identification supplied by Collins. Each time legal authorities became aware of the two, Collins and the boy would hurriedly flee, often leaving belongings in their haste to escape the reach of the law. On at least one occasion the pair were joined by another wayward youth. Bobby testified that Collins encouraged him to bring boys into his apartment but became enraged when once a girl came to visit.

Eventually the pair landed in Rhode Island, again moving from apartment to apartment. Ironically, the police became aware of Collins when a juvenile smashed up a car belonging to Collins and died as a result thereof. The police became suspicious because Collins was exceedingly disinterested in claiming the car. The vehicle was registered under the name Robert L. Hickcox. At the time of his arrest defendant was living under the pseudonym Thomas Newman. The police determined that "Hickcox" had listed a fictitious address on his registration. They called a telephone number that they found on a piece of paper with the name Hickcox written next to it in the glove compartment of the wrecked car. "Hickcox" answered the telephone and supplied a fictitious address. The police called the number again later. This time it was answered by "Mr. Newman" who stated that he resided at the same fictitious address. He also stated that "Hickcox" had been at the apartment but had since departed. The police determined the correct address at which the telephone was located and went to investigate.

Two officers met defendant in the hallway of the building in which he and Bobby resided. One of the officers testified that when defendant saw them, he froze in his tracks "like a cat that just saw a junkyard dog." He identified himself as Thomas Newman. The police stated that they were looking for a man named Hickcox. A taxi arrived for defendant, but the police, their suspicions now thoroughly aroused by defendant's conduct, told him that they had some more questions. They dismissed the cab and instead offered to take defendant to his destination. The police asked to see defendant's apartment to determine whether Hickcox was present. After some initial hesitation defendant consented to take

them in. It was then that the police first became aware of Bobby's presence. One of the officers asked defendant for identification and he produced a Massachusetts card containing the name Thomas Newman.

The police remained unsatisfied with defendant's answers and asked him to accompany them to the Lincoln State Police Barracks (Lincoln barracks or barracks) for further questioning. The defendant "was somewhat reluctant" but agreed to go. During the ride to the barracks the data on defendant's Massachusetts identification was run through the computerized data system in the National Crime Information Center (NCIC). It was determined that a person fitting defendant's description was wanted for perjury and obtaining false identification and defendant was placed under arrest.

A search of defendant pursuant to the arrest yielded an additional card in another name. A further check through the NCIC system revealed that defendant was wanted for kidnaping or child snatching in California. The victim fit the general description of the boy the police observed at defendant's apartment. The officers quickly returned to the apartment. The boy let them in and they took another quick look around the apartment because they were unsure if others were involved. The boy then acknowledged his true identity.

One of the officers, Corporal Richard H. Hurst, observed a gun and some Polaroid photographs, one of them of Bobby nude except for a Santa Claus hat. He picked them up and placed them in his pocket. Another officer, helping Bobby to locate his jacket in the bedroom, noticed an open suitcase with numerous photographs and identification cards in and around it. Some of the photographs were of other juveniles. The officer took the material with him when he left. An officer was dispatched to secure the area. A search warrant was

obtained that afternoon and executed that evening.

The trial justice admitted the evidence seized from defendant's person upon his arrest. He likewise admitted the gun, which turned out to be a lifelike replica, and the pictures picked up by Corporal Hurst. He excluded the contents of the open suitcase over the objection of the state, and admitted the products of the later search pursuant to a warrant.

I

The defense moved for a judgment of acquittal or, in the alternative, a new trial. For the reasons set forth below the trial justice correctly denied both motions. *State v. Wilshire*, 509 A.2d 444 (R.I.1986); *State v. Collazo*, 446 A.2d 1006 (R.I.1982).

II

■ Both the state and defendant correctly urge that defendant's conviction on two counts of first-degree sexual molestation be vacated. The defendant was charged pursuant to G.L. 1956 (1981 Reenactment) § 11–37–8.1, as enacted by P.L. 1984, ch. 59, § 2.[1] Under the terms of this provision the state need not offer proof that the act was committed against the wishes of the victim. The state is required merely to prove beyond a reasonable doubt that (1) the defendant in fact engaged in the sexual penetration of the victim and (2) the victim was thirteen years of age or under.

■ This court has previously been called upon to construe the meaning of the term "thirteen (13) years of age or under" as it appears in § 11–37–8.1. In *State v. Jordan*, 528 A.2d 731 (R.I.1987), we were constrained by our analysis of the statutory scheme enacted by the General Assembly to hold that said term applied to persons under thirteen years of age and to those who are exactly thirteen years old. Section 11–37–8.1 is inapplicable to persons

1. General Laws 1956 (1981 Reenactment) § 11–37–8.1, as enacted by P.L.1984, ch. 59, § 2 provides:

"Definition of guilt of first degree child molestation sexual assault. —A person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person thirteen (13) years of age or under."

after the thirteenth anniversary of birth, such as Bobby Smith. Otherwise, as a result of an anomaly in legislative draftsmanship, two statutes with radically different penalties would have proscribed the same activities, leaving the state with unfettered discretion to prosecute under either statute. 528 A.2d at 733. This court is by no means pleased that it is unable to apply § 11–37–8.1 to reach acts perpetrated upon infants who have passed their thirteenth birthdays. Unfortunately under our system of government the remedy lies with the Legislature, not with this court. We invite the Legislature to cure this anomalous situation, since we lack the power to do so ourselves.

 The state concedes that the acts for which defendant was indicted occurred after the thirteenth anniversary of the birth of the victim, Bobby Smith. Because the state failed to offer proof that defendant accomplished penetration in Rhode Island when the victim was thirteen years of age or under, defendant's convictions for first-degree sexual assault are herewith vacated.[2]

### III

The defendant argues that the trial justice committed reversible error in failing to properly charge the jury with regard to each element of the crime of kidnaping, as set forth in G.L. 1956 (1981 Reenactment) § 11–26–1.[3] The defendant further alleges that the state failed to offer proof beyond a reasonable doubt sufficient to sustain a conviction. As will be seen, *infra,* the trial

justice did not commit reversible error in charging the jury and the state has amply sustained its burden of proof.

Section 11–26–1 is comprised of a number of subparts, each describing an unlawful act punishable under the terms of the statute. In the case of defendant, the state was required to prove beyond a reasonable doubt that (1) David R. Collins (2) without lawful authority (3) inveigled (4) Robert Smith (5) with intent to cause him to be secretly confined (6) within Rhode Island (7) against his will.

The defense concedes that Bobby Smith accompanied defendant on a journey that commenced in California and terminated in Rhode Island. Assuming for the moment that the acts committed by defendant satisfy the requirements of § 11–26–1, the defense does not and cannot dispute that the state has met its burden with respect to elements 1, 4 and 6,[4] for defendant's own brief places defendant with Bobby Smith in the State of Rhode Island. Likewise, defendant does not and cannot argue that he was possessed of lawful authority, conferred or recognized by Rhode Island or California, to secure or retain custody of Bobby, an infant.

The defendant vigorously denies that the acts committed by him constituted kidnaping, instead characterizing his act as aiding and abetting a runaway. Such act is conveniently not a cognizable offense in this state. The defendant reaches this ingenious conclusion by arguing that (1) the state failed to prove that the minor victim,

---

**2.** Collins has since been indicted for acts occurring within Rhode Island when the victim was in fact "thirteen years of age or under" within the terms of § 11–37–8.1 and § 11–37–8.3, as enacted by P.L.1984, ch. 59, § 2.

**3.** General Laws 1956 (1981 Reenactment) § 11–26–1 provides:

"Kidnapping.—Whoever, without lawful authority, forceably [*sic*] or secretly confines or imprisons another person within this state against his will, or forceably [*sic*] carries or sends another person out of this state, or forceably [*sic*] seizes or confines or inveigles or kidnaps another person with intent either to cause him to be secretly confined or imprisoned within this state against his will or to cause him to be sent out of this state against

his will, shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not more than twenty (20) years."

**4.** The contention by the defense that the trial justice committed reversible error by refusing, pursuant to a bill of particulars, to narrow the scope of proof with regard to where the alleged kidnaping occurred is discussed in part V, *infra.* The trial justice charged the jury that it must find that the confinement must be within this state. The defense sought to limit proof to confinement at a particular address specified by the bill of particulars supplied to defendant by the state.

Bobby Smith, was inveigled with the intent to secretly confine and (2) the state failed to prove that the alleged restraint of the boy was "against his will," as required by the statute. We address these contentions in the order set forth above.

A

 The trial justice correctly charged the jury with respect to the meaning of the term "inveiglement" which he defined as:

"connot[ing] deception [for] the accomplishment of an evil purpose. It means *to persuade a person to do something bad* or hurtful *by deceptive acts or by flattery.* To whittle [sic], allude, entice, *to seduce. To lead astray by false representations or other deceitful means.* There need be no physical force but mental control such as an installation of fear is sufficient to satisfy the element of inveiglement." (Emphasis added.)

The instruction given by the trial justice was a correct statement of the law, intelligible to the ordinary lay person, and it accords with the case law of other jurisdictions. *United States v. Macklin,* 671 F.2d 60, 66 (2d Cir. 1982); *State v. Lacoshus,* 96 N.H. 76, 70 A.2d 203 (1950); *State v. Amell,* 303 Or. 355, 736 P.2d 561 (1987); *State v. Dalton,* 98 Wis.2d 725, 298 N.W.2d 398 (1980).

 The defendant, citing *Macklin,* argues that inveiglement requires more than merely enticing the victim away. We do not agree with defendant's contention. *State v. Dalton,* 98 Wis.2d at 732, 298 N.W.2d at 404. In any event, we find that the state has shown substantially more than "mere enticing." Bobby testified, *and defendant agreed,* that Collins told him that Bobby would probably be arrested if he were caught. Collins supplied Bobby with money to play video games before their departure, and later supplied him with expensive gifts. Collins testified that he was motivated to take Bobby in part by an awareness that Bobby might reveal incriminating information about him. In *Drury v. State,* 253 Ind. 392, 394, 254 N.E.2d 335, 336 (1970), an eleven-year-old girl was inveigled with a promise of new clothes and a

different life. In *State v. Lacoshus,* a fifteen-year-old girl was inveigled where a primary motivation of the defendants was to avoid the penalty of charges with respect to which the victim was to testify. The case at bar resembles *Drury* and *Lacoshus* in important relevant respects. Similarly to *Drury,* defendant enticed Bobby with gifts of money before Bobby left home. As was the case in *Lacoshus,* defendant was motivated, according to his own testimony, by an appreciation that Bobby possessed incriminating information about him. In both *Drury* and *Lacoshus* the defendants were found on similar facts to have inveigled their minor victims. In addition, we find that by telling Bobby that he would probably be arrested if apprehended, defendant employed psychological coercion to inveigle him. The state has clearly met its burden with regard to the element of inveiglement.

B

 The defense alleges that the state offered no evidence of secret confinement or intention to secretly confine as required by § 11–26–1. An examination of the evidence offered at trial reveals that the state has met its burden with regard to both intent and secret confinement. The defendant's intent to secretly confine Bobby Smith may be inferred from an analysis of the manner in which the pair moved from community to community, at all times using false identification to conceal their true identities. The use of false identification is inconsistent with an innocent intent and may be considered as circumstantial evidence of guilt. *United States v. Hughes,* 716 F.2d 234, 240 (4th Cir. 1983). Each time the authorities began to suspect that defendant was without legal authority to have custody of Bobby Smith, defendant would flee from the jurisdiction, having first lied to the authorities, albeit with Bobby's help. The defendant's actions clearly bespeak an intention to conceal Bobby from the authorities. In these circumstances the state has satisfied its burden with regard to the existence of defendant's wrongful intent.

We note that more than wrongful intent is required to sustain defendant's conviction. The statute requires intent to cause the victim to be secretly confined. The defendant is quick to point out that the victim appeared to be a willing participant in his own concealment and urges that because of the victim's cooperation, the boy could not be said to have been "secretly confined." The defense further argues that Bobby was not confined at all because he was free to come and go as he wished.

█ The term "secret confinement" has only rarely been construed in other jurisdictions in the context of a situation in which the victim was apparently in a public space. The New York Court of Appeals has had occasion to consider the meaning of "secret confinement" in *People v. Hope*, 257 N.Y. 147, 153–54, 177 N.E. 402, 404 (1931). There the victims were not inveigled, but rather were seized by force in Manhattan as they were about to enter an automobile. Although the victims were confined within the automobile, the automobile was in a public space. The victims avoided their fate when the driver turned the automobile into a police booth and the perpetrators fled. One of the captors was apprehended. The court held that the victims were secretly confined because their captors were concealing their illicit purpose from the public, in this case by having the victims appear to be willing participants in the ride. We agree with this analysis. In the case at bar, defendant secretly confined the victim, Bobby Smith, by concealing him from lawful authorities interested in enforcing the laws of their respective states. Whether it is sufficient to constitute a violation of § 11–26–1 merely to conceal an infant victim from his or her parent or lawful guardian we need not decide today.

We note as well that several jurisdictions have construed the term "concealment" contained within their own statutory schemes similarly to the manner in which we construe the term "secret confinement" today. In *State v. Lacoshus*, the Supreme Court of New Hampshire observed that

" '[i]t does not necessarily require that the subject of [the confinement] be secreted in a garret, cellar, barn, or covered wagon * * * and the limits of the whole country [may be] as good a place to *secrete* a fugitive from a distant state as any that could be imagined * * *.' " (Emphasis added.) 96 N.H. at 79, 70 A.2d at 206. In *Lacoshus* the court construed a "child snatching" statute.[5] The victim in *Lacoshus* was a willing collaborator with the defendants as was Bobby Smith. In *State v. Stubsjoen*, 48 Wash.App. 139, 145, 738 P.2d 306, 309 (1987), a case construing that state's child snatching statute, the defendant removed a six-month-old infant from an automobile. The court held that the defendant concealed the child by acting as though it were her own. The court reasoned that the child was abducted even though it was held in public areas. The court noted that the victim was held in circumstances making it unlikely that those persons directly affected by the victim's disappearance would find the child. Bobby was held in circumstances making it highly likely that neither the police nor his parents would ever find him. The defendant also acted as though Bobby was his own child.

We conclude from the foregoing analysis that the state has amply shown that defendant kidnaped the victim, Bobby Smith, with intent to cause him to be secretly confined within the State of Rhode Island, as set forth in § 11–26–1.

### C

█ The defense vigorously contends that the taking of Robert Smith, if it be deemed such, was not against his will, as required under its interpretation of § 11–26–1. Thus, it is argued, defendant's conviction must fall for failure to prove a necessary element of the crime, namely lack of consent. We hold that the state has offered sufficient proof to sustain a conviction for the violation of § 11–26–1 on grounds that the misrepresentation or other form of enticement that forms the basis of defendant's inveiglement of the victim is

---

**5.** The term "child snatching statute," as used herein, refers to statutes that make it a crime to remove a child from the lawful custody of a parent or guardian. *See, e.g.,* § 11–26–1.1.

the equivalent of and satisfies the requirement of lack of consent.

In *State v. Dalton,* the Court of Appeals of Wisconsin was called upon to construe the meaning of a statute[6] that, like § 11–26–1, contained the requirement that the victim be secretly confined against his will. In *Dalton* the defendant, by trickery, convinced the victim to accompany him to a trailer and allow him to bind and gag her, purportedly to play a joke on the children. 98 Wis.2d at 740–41, 298 N.W.2d at 405. There, the defendant argued unsuccessfully that "there were 'no words or conduct on defendant's part that would tend to destroy or take away the exercise of free will or choice' of the victim * * *." *Id.* at 738, 298 N.W.2d at 404. The Court of Appeals recognized that in cases where deceit forms the predicate of the offense, a victim ordinarily will not have occasion to exercise his or her free will, if the deception is effective. We agree. Inveiglement carries with it the connotation of a fraud upon the unwitting victim. To require the victim to discover the fraud and attempt to resist potentially superior force in order to come within the ambit of the statute would eviscerate its effectiveness. Indeed, such requirement would subsume inveiglement under the separate and distinct element that criminalizes a forcible seizure. Section 11–

26–1; *see also United States v. Hughes,* 716 F.2d 234 (4th Cir. 1983).

The trial justice instructed the jury that because the victim Bobby Smith was thirteen years of age he had no legal ability to consent to the acts that we hold violated § 11–26–1. The trial justice was proceeding on the theory that a thirteen-year-old lacks the capacity to consent to the trip he undertook with defendant. The defense cites this charge as reversible error. Additionally the defense assigns as reversible error the fact that the trial justice refused to instruct the jury that the lack of consent by the victim's parents was immaterial. Because we decide this matter on the ground that the requirement of lack of consent by the victim is satisfied by defendant's deceit or misrepresentation we do not reach the question of whether an infant, thirteen years of age, lacks the capacity to consent to accompany an adult otherwise without the legal authority to remove him from his home.[7] Thus we assume, without deciding, that the trial justice committed error. We hold said error, if it be such, to be harmless. When an instruction is technically incorrect but addresses itself to matters that are not material to the offense charged, the defendant's rights are in no way prejudiced and the technical inaccuracy is disregarded as harmless error. *See*

---

6. Wis.Stat.Ann. § 940.31(1)(c) (West 1982) provides:

"Kidnapping.

(1) Whoever does any of the following is guilty of a Class B felony:

* * *

(c) *By deceit induces another to go from one place to another with intent to cause him to be secretly confined* or imprisoned or to be carried out of this state or to be held to service *against his will.*" (Emphasis added.)

7. We note that in 1915 the General Assembly amended the kidnaping statute by adding a provision calling for the imposition of a prison sentence of up to ten years or a $1,000 fine against any person "who willfully * * * entices away * * * a child under the age of eighteen years, with intent to keep or conceal it from the person or persons having the lawful care or control hereof * * *." General Laws ch. 343, § 22, as enacted by P.L. 1915, ch. 1258, § 8. *State v. Innis,* 433 A.2d 646, 652–53 (R.I. 1981). Section 22 of then chapter 395 was abolished in 1932 by P.L. 1932, ch. 1866, § § 1, 2. The provision was stricken by amendment in the House

of Representatives on March 8, 1932 immediately after the proposed penalty for kidnaping was increased from a proposed maximum term of twenty-five years to a term of life imprisonment. Prior to the passage of the bill the maximum allowable term of imprisonment for kidnaping was less than twenty-five years. This same bill eliminated the requirement of asportation outside the jurisdiction. It is inconceivable that the General Assembly would, on the one hand vastly increase the penalty for kidnaping and criminalize for the first time kidnaping where the wrongful act occurs solely within the bounds of Rhode Island and on the other hand decriminalize child snatching in some cases by requiring the state to prove for the first time that the taking was against the will of the infant. Obviously the Legislature concluded that children labor under a disability rendering them unable to consent to such taking. This is particularly so in view of the fact the legislation was passed under the dark shadow of the famed Lindburgh kidnaping.

*State v. Mihill,* 299 A.2d 557 (Me. 1973). Because defendant was charged with inveigling, consent by the victim to the taking was immaterial. As a result, neither the charge nor the refusal by the trial justice to charge on the issue of consent constituted reversible error.

### D

■ The defense asserts that the evidence proffered was insufficient to prove that defendant kidnaped Robert Smith. In determining whether the verdict is supported by sufficient evidence to sustain a conviction, we examine the record in the light most favorable to the prevailing party. We must look for any competent evidence which, if believed, would support the verdict. *State v. Barnes,* 122 R.I. 451, 409 A.2d 988 (1979). We have reviewed the evidence upon which defendant was convicted. The state has offered competent evidence with regard to each element of § 11–26–1. We find such evidence sufficient to prove beyond a reasonable doubt defendant's conviction of kidnaping. *See* part III A–C, *supra.*

### IV

■ The defendant assigns as reversible error the admission into evidence by the trial justice of statements made and evidence seized from defendant's person upon his arrest; the admission of a lifelike facsimile of a .38 calibre "Police Special" pistol and photographs surrounding it; and the products of a later search pursuant to a warrant. The state cross-appeals with respect to the decision of the trial justice to exclude the contents of a suitcase located in the bedroom of defendant's apartment. The defendant further argues that the state impermissibly intermingled evidence in the suitcase with evidence surrounding it and seized at other times. Thus, defense argues, the evidence should have been suppressed because the state failed to maintain a chain of custody with respect to the items seized throughout the time in question.

In reviewing the decision of a trial justice on a motion to suppress, the duty of the reviewing court is to view the evidence in the light most favorable to the state and apply the "clearly erroneous" rule. We give great deference to the findings of fact of the trial justice. We shall not overturn his findings unless they are clearly erroneous. *State v. Beaumier,* 480 A.2d 1367, 1375 (R.I. 1984). We hold that the decision by the trial justice to admit various items into evidence was not clearly erroneous.

### A

The defense argues that the evidence seized from defendant's person while in custody and thereafter from his apartment are suppressible as the products of an illegal arrest. Evidence that is derivative of an illegal arrest, made in violation of the Fourth Amendment proscription against arrest in the absence of probable cause, must be suppressed unless the seizure falls within the purview of one of a few carefully delineated exceptions. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ According to defendant's theory, he was effectively arrested when the police waved away the taxi or, at the latest, when he was placed in the vehicle that carried him to the Lincoln barracks. Such a theory is plausible, and if we find that defendant did not agree to let the police into his apartment and later to voluntarily accompany the officers to the Lincoln barracks, any statements made or tangible evidence seized as a result of the arrest are suppressible under our holdings in *State v. Beaumier,* 480 A.2d at 1374–75 and *State v. Bailey,* 417 A.2d 915, 917–18 (R.I. 1980). In *Bailey,* we set forth several factors that we consider in determining whether an arrest or seizure has taken place for Fourth Amendment purposes. No one factor is dispositive. Rather we analyze the interchange between a suspect and the authorities pragmatically to determine whether an arrest or seizure has in fact occurred. Among the factors we consider are (1) the extent to which the suspect's freedom of movement has been curtailed; (2) the degree of force used by the police; (3) the belief of a reasonable innocent person in

the same circumstances; and (4) whether the suspect had the option of not accompanying the police. *Id.* We note that no physical force whatsoever was used to restrain defendant. His hands remained unshackled. No weapons were ever displayed. The defendant was never surrounded by a great number of uniformed officials. In contrast with *State v. Mattatall*, 510 A.2d 947 (R.I. 1986), *vacated on other grounds*, 479 U.S. 879, 107 S.Ct. 265, 93 L.Ed.2d 243 (1986), *aff'd on other grounds*, 525 A.2d 49 (R.I. 1987), defendant was never informed that he was wanted as a suspect of a crime.

The state offered credible evidence in the form of testimony by two ranking and experienced law enforcement officials that strongly suggested that defendant voluntarily tendered his identification to the officers, voluntarily allowed them to look for "Hickcox" in his apartment and voluntarily accompanied them, albeit without great enthusiasm, to the Lincoln barracks. The defendant himself testified that he had "absolutely no objection to [the police] going in" to his apartment. In contrast with the situation in *Bailey,* the interaction between defendant and the police occurred in the morning and for the most part in a public area. The defendant was never told that he was not free to leave. Although Corporal Hurst testified that he would not have let defendant go, his subjective intent was never manifested to defendant and thus is not an indicia of restraint. *State v. Ferola,* 518 A.2d 1339, 1344 (R.I. 1986). If defendant's actions were indeed voluntary, any statements made or evidence seized subsequent to a lawful arrest founded upon probable cause are admissible against defendant assuming that the admission of such evidence is otherwise constitutionally supportable. As will be seen, *infra,* probable cause arose to support the various actions by the police once defendant was identified as a suspect wanted for kidnaping or child snatching, perjury, and obtaining false identification.

The trial justice, carefully weighing competing claims, found as a matter of fact that defendant was not under arrest when he handed his identification card to Corporal Hurst but tendered it voluntarily. He also found that defendant had volunteered to let the officers look for Hickcox in his apartment. The trial justice further found that items taken from defendant's person at the barracks were seized incident to a lawful arrest. If we agree, the identification card that defendant tendered to the police is admissible against him. Further, any evidence subsequently seized at defendant's apartment is not irretrievably tainted by defendant's arrest or the entry into defendant's apartment to look for Hickcox provided its admissibility is otherwise constitutionally supportable. *See* part IV B–F, *infra.*

Where the trial justice makes findings of fact after carefully weighing conflicting factual claims and thereupon makes a determination to admit evidence, such determination is entitled to great weight. *State v. Beaumier,* 480 A.2d at 1375. We cannot say that he was clearly wrong. Thus we find that the card tendered to the police by defendant and the statement made and evidence seized from defendant's person upon his arrest are admissible against him. We further hold that the evidence seized from defendant's apartment pursuant to a warrantless entry to retrieve Bobby, subject to the exclusion of the contents of a suitcase, and the products of a later search pursuant to a warrant may be admitted pursuant to a proper constitutional basis. *See* part IV B and C, *infra.*

**B**

■■■ Once the police officers determined that defendant was wanted for child snatching or kidnaping a young boy, they realized that the victim might well be the child present in defendant's apartment. The officers returned to the apartment immediately to investigate. They knocked and upon gaining admission made a quick sweep of the apartment. Such sweep was entirely appropriate in view of the fact that the officers had no way of knowing, short of looking, whether defendant had an armed confederate who had returned. *State v. Jennings,* 461 A.2d 361, 365–66 (R.I. 1983).

The trial justice held that the officers were lawfully present in defendant's apartment because (1) an emergency came into being and (2) the victim consented to their entry into the dwelling. We do not reach the question whether Bobby effectively consented to the entry into the apartment that he shared with defendant, *see State v. Beaumier, supra,* for we find that the discovery that the possible presence in a suspect's apartment of an infant victim of a child snatching or kidnaping created an emergency or exigent circumstance permitting a warrantless entry into said apartment. *State v. Jennings,* 461 A.2d at 367. That probable cause existed to believe that the child in the apartment was in fact the victim cannot be gainsaid. According to the information provided by the NCIC computer the perpetrator of the child snatching or kidnaping was missing a finger on his left hand. Collins was missing a finger on his left hand. The victim fit Bobby's description. To expect the police to secure a warrant while the infant remained alone in the apartment or, worse, was removed therefrom by a confederate of defendant strains credulity. We agree with the determination of the trial justice that a warrant was not required before the police entered defendant's apartment.

### C

When the police officers entered defendant's apartment to investigate whether the boy in the apartment was Bobby Smith, Corporal Hurst noticed what appeared to be a "Police Special" pistol in plain view on a coffee table. He naturally went to investigate and saw underneath and surrounding it several Polaroid snapshots including one of Bobby sitting in front of a Christmas tree, naked except for a Santa Claus hat. Hurst picked up all the items and placed them in his pocket. Later, while helping Bobby to locate his jacket in the bedroom, Sergeant Robert McQueeney noticed on the bed an open suitcase that contained phony indentification cards and photographs. More cards and photographs surrounded the suitcase. The trial justice excluded the items contained in the suitcase from evidence, finding himself controlled by *Jennings.*

The seizure of property in plain view by an officer is allowable when "(1) the officer was lawfully in the position that allowed him to see the evidence, (2) the officer discovered the evidence inadvertently, and (3) it was immediately apparent to the officer that the object was evidence of criminality." *State v. Eiseman,* 461 A.2d 369, 379 (R.I. 1983). Corporal Hurst observed what appeared to be a pistol on a coffee table. To argue that such pistol did not fall within the plain-view exception strains credulity. *Id.*

The snapshots that Corporal Hurst seized surrounded the gun. They were also in plain view. The defendant argues that the snapshots should have been excluded because (1) they were not evidence of a crime and (2) they were highly inflammatory of the jury. We disagree.

The snapshots seized by Corporal Hurst were probative of defendant's motive and intent in kidnaping Bobby Smith. *See State v. Pignolet,* 465 A.2d 176, 181 (R.I. 1983). When the officers reentered the dwelling they expected to find Bobby, not a facsimile of a gun and obscene photographs. Each of the items named was in plain view. As mentioned earlier, the officers were legally present in the apartment due to the existence of exigent circumstances. Thus all of the factors required to legitimate the search were present. *Eiseman,* 461 A.2d at 379. As a result of the foregoing, the gun and photographs were properly admitted by the trial justice.

Bobby was having trouble finding his jacket. Sergeant McQueeney walked into the bedroom to help him find his jacket so that they could leave. On the bed where the jacket was found stood an open suitcase with numerous counterfeit identification cards and photographs in and around it, including photographs of other juveniles. As mentioned earlier, the trial justice excluded the items in the suitcase, citing *State v. Jennings.* In *Jennings* the police conducted a systematic warrantless search of the defendant's apartment after first completing a security sweep. The police,

who were investigating a shooting on the street, entered the apartment because the landlord's son informed them that it had been ransacked. Because the police first secured the dwelling and then conducted a systematic search without a warrant we excluded the evidence uncovered during the search. Here, in contrast, there was no search. Bobby testified that Sergeant McQueeney came upon the contested items while helping him to find his coat so the three could leave.

While Sergeant McQueeney did not discover the suitcase as a result of a systematic search and at least some of the incriminating material lay at the top of the open suitcase in plain view, arguably some of the contents thereof were suppressible under the doctrine enunciated in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Thus we affirm the suppression by the trial justice of the material contained in the suitcase. The defendant argues that because evidence seized elsewhere in his apartment was not clearly separated from the excluded evidence contained in the suitcase he may have been convicted through the use of tainted evidence. Thus, according to defendant, he should be accorded a new trial. We are of the opinion that the trial justice did an effective job in distinguishing that which was admissible by reason of the plain-view exception from that evidence which may have been obscured in the suitcase.

▇ Assuming without deciding that one or two items may have slipped through the trial justice's carefully screened determination we pause to determine whether the admission of such evidence constituted harmless error. In order to so hold we must be able to declare a belief that the admission of the tainted evidence was harmless beyond a reasonable doubt. *State v. von Bulow,* 475 A.2d 995, 1013 (R.I. 1984). In *von Bulow* the defendant was convicted upon the precise evidence sought to be excluded. There we were unable to find the admission of the tainted evidence to be harmless beyond a reasonable doubt. Here, in contrast, the evidence

complained of was highly cumulative at best. Given the testimony of defendant himself, *State v. Powell,* 533 A.2d 530, 532–33 (R.I. 1987), the testimony of the victim, the evidence of obscene photographs lawfully seized in the living room that were independently identified by Corporal Hurst as lying in plain view on the coffee table and a whole host of other corroborative evidence, we find beyond a reasonable doubt that any alleged use of illegally seized evidence did not contribute to defendant's conviction. *von Bulow,* 475 A.2d at 1013; *State v. Robalewski,* 418 A.2d 817, 824–25 (R.I. 1980).

### D

▇ The defense argues that the search of defendant's apartment was executed without probable cause. We reject any contention by defendant that evidence seized pursuant to the search conducted by the police once they secured a warrant was inadmissible. We have already noted that evidence seized subsequent to defendant's arrest was not tainted by virtue of the entry by the officers to look for "Hickcox" or by the manner in which defendant volunteered to accompany them to the Lincoln barracks. Once defendant was identified through the NCIC computer system as the likely perpetrator of a child snatching or kidnaping and, further, that he was suspected of perjury and obtaining false identification, probable cause arose to suspect that various crimes had been committed and that evidence thereof could be found in defendant's apartment. Once the police retrieved Bobby the exigency ceased and the officers quite properly secured the apartment and obtained a warrant before conducting a search. Leaving aside for the moment the question of the admissibility of video cassettes, which is addressed in part IV F, *infra,* we hold that the products of the search pursuant to a lawfully issued warrant, founded upon probable cause, are admissible against defendant.

### E

▇ The defendant argues that all the evidence seized from his apartment is ex-

cludable because the state failed to demonstrate that it possessed each item in an unbroken chain from the moment of seizure until the date of trial. The defendant correctly observes that some items appear on both a warrant return and an inventory made of items taken after the warrantless entry into defendant's apartment to retrieve Bobby. In the same vein, items picked up by Corporal Hurst in the living room and items surrounding the suitcase in the bedroom were all placed in the suitcase by the time the items were inventoried. The existence of at least one item seized pursuant to the warrantless search, a video tape, did not appear on the inventory at all.

We view defendant's argument as unduly formalistic. This court does require continuity of possession of evidence. Such continuity acts as a guarantee against the danger that someone might have tampered with the evidence. *State v. Roddy*, 401 A.2d 23, 36 (R.I. 1979). We have already addressed the admissibility of evidence seized from defendant's bedroom. *See* part IV C, *supra*. We note, too, that the officers were able to specifically identify many of the items seized, including the noninventoried video tape, and testify that said items were transported by them to the barracks. Another officer testified that he personally transported the evidence from the Lincoln barracks to State Police Headquarters in North Scituate. We have previously said that the prosecution is not required to exclude all possibility that a proposed exhibit has been the subject of tampering. Thus in *State v. Infantolino*, 116 R.I. 303, 312, 355 A.2d 722, 727 (1976), we observed that while a continuous chain of possession is a more effective guarantee of possession than a reliance upon identifying marks or labels we did not require that an exhibit be admitted only upon a showing of a continuous chain of custody. We merely require the existence of a reasonable possibility that the proposed evidence is in substantially the same condition, when offered as an exhibit, as it was in when the crime was committed. *State v. Roddy*, 401 A.2d at 36. Our view of the record indicates that this standard has been met.

### F

The defendant argues that the contents of pornographic video cassettes seized from his apartment should have been excluded because a separate warrant was required in order for the authorities to view them. *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). Sufficient proof was offered to satisfy us that one of the video cassettes in question had been given to Bobby by defendant. As a result defendant lacks standing to object to the admissibility of the contents of said film. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Said film was clearly relevant as being probative of defendant's motive for abducting Bobby. *See State v. Pignolet*, 465 A.2d at 181. Thus it was admissible against defendant. In view of the overwhelming evidence otherwise admissible against defendant, we find the admission of the contents of any other such video tape to be harmless error.

### V

The defendant asserts that his conviction should be reversed because the charge given by the trial justice allowed the jury to convict on facts outside the scope of a bill of particulars provided by the state. Specifically, the indictment and charge allowed the jury to convict upon finding, pursuant to § 11–26–1, that defendant confined the victim "within this state." The state had previously alleged in its bill of particulars that the kidnaping occurred at a specified address in Providence, Rhode Island. According to defendant, his conviction is fatally flawed, apparently because the jury could have found that he had confined the victim at another address.

The function of a bill of particulars is to provide the defendant with the factual detail omitted from an indictment or information. Its primary purpose is to supply the defendant with such particulars as are necessary in order that judicial surprise is avoided at trial. LaFave & Israel, *Criminal Procedure* § 19.2(f) at 717–18 (1985).

The rules governing variance between proof and pleading apply to a bill of particulars just as they do to an indictment or information. *State v. Lanigan,* 528 A.2d 310, 319 (R.I. 1987) (citing LaFave & Israel, *supra* ). As Justice Sutherland observed in *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed 1314, 1318 (1935):

> "The true inquiry * * * is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirement[ ] * * * that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial * * *."

Judged from this perspective, it is clear that the variance did not constitute reversible error. Beyond question, defendant was definitely informed as to the charges against him, enabling him to present a defense and avoid surprise. Thus, we hold defendant's contention to be without merit.

## VI

The defense asserts that fundamental fairness requires that defendant be given a new trial because evidence was introduced to support defendant's conviction on two counts of first-degree child molestation. The defense argues that it objected throughout the trial that the conduct alleged to constitute the offense was not criminalized by virtue of § 11–37–8.1. According to the defense, evidence of such conduct was not relevant to the kidnaping charge and it was severely prejudicial to defendant.

8. Request No. 11. "I have instructed on the factors that you may use in your deliberations in weighing or assessing the credibility of witnesses. I also instruct you that you should use these same factors in weighing or assessing the credibility of a child witness. That is, you should weigh or assess the credibility of a child witness the same as you would any witness."

9. Request No. 14. "In weighing and evaluating a witness's testimony, and in particular that of a child witness, you may consider pressures

We have already said that evidence of sexual misdeeds are admissible to show defendant's motive and intent. Indeed such evidence is admissible regardless of whether defendant was charged therewith. *See State v. Pignolet,* 465 A.2d at 181–82. The probitivity inhering in such evidence far outweighed any prejudice. *See State v. Ware,* 524 A.2d 1110, 1114 (R.I. 1987). Because the evidence is probative and otherwise admissible, *see* part IV C and F, *supra*, the trial justice did not commit reversible error in admitting it.

## VII

The defense cites as reversible error the failure by the trial justice to charge the jury in accordance with requested jury instruction No. 11 that it may consider the pressures brought to bear upon a child witness.[8] The trial justice also refused to charge the jury in accordance with requested jury instruction No. 14. The latter instruction called into question the voluntariness (and value) of testimony given where the witness initially refuses to cooperate with the police and later provides a statement, having been in custody for some time.[9]

The defense asserts in its brief that the purpose of proposed request No. 11 was "to inform the jurors that they should assess Bobby's testimony no differently from other witnesses, simply because of his age." If such was the objective of the instruction, a general instruction upon the assessment of the credibility of a witness such as that given by the trial justice would surely suffice.

We have previously observed that a trial justice need not give specific instruc-

brought to bear upon the witness to induce that testimony as part of your assessing the witness's credibility. In other words, the voluntariness of a witness's statement and/or testimony is another credibility factor that you may consider, in particular if the witness refused to give a statement and/or cooperate with the police and then later on gave a statement and/or testimony before you after being in the police station or custody for some time."

tions requested by a party so long as the charge adequately covers the subject matter relating to the request. *State v. Fenner,* 503 A.2d 518, 525 (R.I. 1986). There we noted that, at least with regard to alibi testimony or accomplice testimony, general instructions are preferred to a specific instruction. We do not say that in all cases an instruction relating to the evaluation of testimony by a child witness is impermissible. However, we are of the opinion that the trial justice's instructions on the subject of credibility were more than adequate. *Id.* Thus we hold that the trial justice did not commit reversible error in refusing to instruct the jury in accordance with proposed request No. 11.

 We further observe that the second portion of request No. 14 comes perilously close to placing the trial justice in the posture of an advocate for the defense. The section that addresses the issue of voluntariness unmistakably describes the precise situation in which Bobby found himself and impliedly questions whether the testimony given by Bobby was voluntary.

It is our view that it is the role of counsel, not of the trial justice, to act as advocate for either the prosecution or the defense. Counsel for both parties are given adequate opportunities to argue matters that relate to the witnesses' credibility, including motivation. *State v. Fenner,* 503 A.2d at 525. The defendant's attorney very effectively pointed to numerous inconsistencies in Bobby's testimony and effectively explored Bobby's possible motivation to lie. In this jurisdiction trial justices are inhibited from commenting upon the evidence unless they do so in a completely impartial manner. *Id.* In view of the fact that the trial justice adequately charged the jury on the subject of credibility, we hold that the trial justice did not commit reversible error in refusing to charge the jury in accordance with proposed request No. 14.

We have considered the defendant's other contentions and find them to be without merit.

The appeal by the defendant is sustained solely with regard to his conviction on two counts of first-degree sexual molestation. His conviction pursuant to § 11-37-8.1 is herewith vacated. The appeal by the state on the issue of the exclusion by the trial justice of certain evidence seized without a warrant is denied and dismissed. In all other respects the defendant's appeal is denied and dismissed, and the judgment entered in the Superior Court is affirmed.