STATE

v.

**Joseph BROUILLARD.**

**No. 96–344–C.A.**

Supreme Court of Rhode Island.

Feb. 4, 2000.

vehicle."

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

James Moretti, Cranston, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This appeal from a criminal conviction challenges the voluntariness of a defen-

dant's courthouse confession to a series of robberies that occurred in the southeastern part of Rhode Island during 1992. It also questions the propriety of the defendant's absence from a pretrial chambers conference during which the trial justice granted the defendant's motion to sever his case at trial from that of a codefendant.

The defendant, Joseph Brouillard, was indicted, tried, and convicted for committing two counts of robbery in violation of G.L.1956 § 11–39–1; committing two counts of conspiracy in violation of G.L. 1956 § 11–1–6; carrying a pistol without a license in violation of G.L.1956 § 11–47–8; possessing a firearm after being convicted of a crime of violence in violation of § 11–47–5; and for being a habitual criminal in violation of G.L.1956 § 12–19–21. The defendant's cousin, Kenneth J. Brouillard (cousin), was also indicted on similar charges arising from the same incidents. However, instead of proceeding to trial, the cousin eventually pled guilty and received a sentence of twenty-five years, with eight to serve, seventeen suspended with probation. During defendant's trial, just prior to closing arguments, defendant fled the jurisdiction. The police, however, eventually apprehended him, after which the court sentenced him in 1995 to fifty years imprisonment with twenty years to serve.[1]

The defendant contends on appeal that (1) his confession to the police should have been suppressed, and (2) he should receive a new trial because he was not present at a pretrial chambers conference during which the trial justice granted defendant's motion to sever his trial from that of his cousin. The defendant argues that this conference, conducted in his absence, violated his right to be present at every stage of his trial as guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution, and by art. 1, sec. 10, of the Rhode Island Constitution, as well as by Rule 43 of the Superior

---

1. For violating the habitual offender statute, the defendant was also sentenced to six addi- tional months to run consecutively with each count.

Court Rules of Criminal Procedure. For the reasons expounded below, we deny defendant's appeal and affirm the judgment of conviction.

## Analysis

### A. Voluntariness of Defendant's Confession

The defendant claimed that he was undergoing symptoms of alcohol withdrawal when he confessed to his crimes during a pre-arraignment courthouse meeting with the police on March 31, 1992—a meeting that defendant had requested his wife to arrange. He averred that he had been in the habit of drinking a quart of vodka and several beers per day before his March 28 arrest. The defendant further suggested that, under the conditions of withdrawal imposed upon him during his post-arrest stay in the prison hospital ward, his mental state had deteriorated so drastically that his later confession during his March 31 courthouse meeting with the police should be considered involuntary. Although defendant did not give a statement to the police on the night of his arrest, he claimed that his "deteriorated mental state caused by his alcohol withdrawal was no resistance against the coercive police conduct during his interrogation." While he was recuperating in the prison hospital ward at the Adult Correctional Institutions (ACI), defendant contended that "the [police] threats and promises [during his initial interrogation] kept amplifying in the defendant's mind." He further asserts on appeal that the record contains sufficient facts for this Court to conclude that his courthouse confession to the police several days after his arrest was not a product of his free and rational thought and that therefore it should have been suppressed.

### 1. Standard of Review

■ In reviewing a trial justice's motion to suppress a confession, "we accord deference to the trial court's factual findings concerning the historical events pertaining to the confession by using a 'clearly erroneous' standard of review." *State v. Carter*, 744 A.2d 839, 845 (R.I.2000). With respect to the voluntariness of a confession, however, this Court undertakes a *de novo* review of questions of law and mixed questions of law and fact because constitutional rights are implicated in these determinations. *Id.* (citing *State v. Nardolillo*, 698 A.2d 195 (R.I.1997)). A defendant's confession is admissible if the state proves by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his constitutional rights, including his right to remain silent and to obtain legal representation. *See id.*

### 2. Initiation of Contact with Police and Defendant's Waiver of his Rights

■ In determining the admissibility of a confession by a defendant who initially has invoked one or more of his or her *Miranda*[2] rights, two factors must be considered: (1) whether the defendant "initiated conversation" with the authorities; and (2) whether, considering the totality of the circumstances, defendant waived his or her "right to counsel and to remain silent." *State v. Lionberg*, 533 A.2d 1172, 1177 (R.I.1987). In this case defendant not only initiated contact with police, but he also expressly waived his constitutional right to counsel and to remain silent immediately before he confessed to the crimes in question.

■ The evidence offered at the suppression hearing in this case amply supports the conclusion that defendant initiated the meeting with the police during which he confessed to the crimes in question. Even though a defendant initially invokes his or her constitutional rights, this circumstance does not preclude the defendant from subsequently changing his or her mind and offering to speak with the police, in which event any resulting statement may be considered voluntary. *See*

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*id.* Such an initiation of contact with the authorities must indicate "a willingness and desire for a generalized discussion about" the crimes at issue. *Id.* (quoting *Oregon v. Bradshaw,* 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405, 412 (1983)). In *Lionberg,* the defendant was arrested in Kansas and initially invoked his right to counsel after being informed of his *Miranda* rights, at which point the police officers ceased further questioning. *Id.* at 1176. The police thereafter placed the defendant in a cell, and some time later he asked one of the officers when he was going to be extradited to Rhode Island. *Id.* When the officer responded that he was not sure the defendant would be extradited because he did not know why the defendant was wanted in Rhode Island, the defendant responded, "[T]hey want me because I killed that old lady and stole her car. That's murder one and grand theft auto." *Id.* This Court held that although a criminal suspect initially may invoke his or her rights and then terminate police questioning, such an event does not preclude the trial court from admitting into evidence the suspect's later confession after the suspect has changed his or her mind, has initiated police contact, and has engaged in conduct that effectively waives his or her rights to obtain legal counsel and remain silent. *Id.*

The only witnesses who testified at the suppression hearing in the present case were Officer Philip Martin (Officer Martin) and Detective George Arruda (Det.Arruda). Their uncontradicted testimony was that defendant, through his wife, initiated contact with them while defendant was being detained at the ACI. Detective Arruda had initially advised defendant of his rights in the early morning hours of March 28, 1992, several hours after defendant's arrest. At that time, defendant did not wish to give the police a statement. However, when testifying about the courthouse meeting with defendant on March 31, Det. Arruda described the post-arrest events that indicated that defendant had changed his mind:

"Q And who initiated the meeting between you and this Defendant on the 31st?

"A His [defendant's] wife.

"Q And you were not prepared to take a statement that morning, is that correct?

"A Not at all, sir. I never expected to speak to that gentleman.

"Q And only because of his wife having contacted the Little Compton Police did you go and meet with him, is that correct?

"A That's correct, sir."

■ Likewise, Officer Martin testified that a member of his department received a phone call on March 29, 1992, from defendant's wife, Gail Brouillard. Officer Martin further testified that as a result of Gail Brouillard's call, he and Det. Arruda met with defendant because "[defendant] wanted to speak with us concerning the robberies that had occurred." Such an invitation from defendant's wife certainly indicated to the police that defendant possessed a "willingness to discuss" the crimes in question. *Lionberg,* 533 A.2d at 1177.

Furthermore, defendant admits that he instructed his wife to call the police while he was incarcerated at the ACI because he wanted to talk with them. Once defendant initiated this contact, the police responded appropriately by meeting again with defendant and taking his statement. *See State v. Halstead,* 414 A.2d 1138, 1151 (R.I.1980) (holding that a defendant who initially requested an attorney and later waived his rights by informing police he wanted to give a statement "knowingly, voluntarily, and intelligently waived his right[s]"). In this case, without any police prompting or encouragement, much less coercion, defendant simply changed his mind after initially invoking his *Miranda* rights.

Nevertheless, defendant contends that his waiver of rights was involuntary because of his medical condition at the time

he met with police at the Newport courthouse. He claims that he was suffering from alcohol withdrawal symptoms that impaired his capacity for rational functioning. For the reasons set forth below, however, we disagree with defendant's contention that his confession should have been suppressed.

First, defendant's impaired mental state, if it was impaired, was irrelevant to the question of the voluntariness of his confession because it was not induced by the police or by any other state actor. *Cf. Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (holding that a confession of a mentally ill defendant induced by "God's command" to confess or commit suicide, while involuntary in the broader sense of the term, was not involuntary within the meaning of the Fourteenth Amendment when the coercion alleged was not due to impermissible police conduct). In this case defendant's alleged alcohol-withdrawal symptoms were a product of his own tippling tendencies and not of any coercive state action. Moreover, defendant's mere detention in the prison hospital ward pending his arraignment did not amount to improper state action or police coercion. Hence, defendant's alcohol-related problems do not constitute grounds for claiming that his waiver of rights and subsequent confession were involuntary.

Second, the totality of the circumstances surrounding defendant's waiver of his rights also belies his assertion of police coercion. At the suppression hearing, Officer Martin testified that when he and Det. Arruda finally met with defendant on March 31, defendant appeared "not to have any problems out of the ordinary. He seemed to be, the best way to put it, would be normal as far as I could tell." According to Det. Arruda, defendant "was coherent. He well knew what he was doing." These statements were uncontradicted because they came from the only two witnesses who testified during the motion to suppress defendant's confession.

The defendant's medical records from the ACI constituted the only evidence defendant introduced at the suppression hearing to support his contention of mental incapacity. Although defendant introduced these records in an attempt to show that he was unable to confess voluntarily because of his medical condition on that date, the medical records do not support that conclusion. The notes from March 31, 1992, the day defendant confessed, indicate that defendant was not experiencing any tremors; that he was alert, oriented, and had slept well; and that, in his own words, he "[felt] o.k." The notes for that day also indicated that the medication he had been receiving was withheld because of his court appearance. Thus, as in *State v. Page*, 709 A.2d 1042, 1044 (R.I.1998), defendant's "assertion [that he was incapacitated due to alcohol withdrawal symptoms] was belied by the undisputed fact that he was coherent and responsive during the police interview."

It is also undisputed that defendant received his *Miranda* rights for a second time on March 31, just before giving his statement. Officer Martin testified as follows:

"I asked [defendant] if he wished to speak with us. He said that he did. At that point I read him his Miranda rights which are clearly printed on a Miranda sheet. I read each right to him and I also let him read them himself. I then asked him if he understood all of the rights. He said that he did. I asked him if he would sign the rights form and initial it, and he did."

Officer Martin further testified that after receiving and waiving his rights, defendant indicated that he wished to give a statement. The defendant never requested an attorney and he never asked for the questioning to cease. After acknowledging that he was advised of his rights and wished to waive them, defendant responded to this question: "Joseph, in your own words, can you tell the police what

you and Kenneth Brouillard have been doing recently regarding robberies in Tiverton, Little Compton, Rhode Island and Westport areas"? The defendant then proceeded to provide the police with a single-spaced statement, which was about five pages long confessing to the crimes. Because the trial justice was waiting to arraign defendant formally, the officers finally interrupted him, which prompted defendant to complain that he was being rushed and that he had many more details to share. Thus, it is abundantly clear to us that, in light of the totality of the circumstances, defendant was eager to talk to the police and did so after knowingly and intelligently waiving his rights. The evidence overwhelmingly supports the trial justice's finding that "knowingly, understandingly and without any coercion this individual waived his rights."

### B. Defendant's Claim that He Was Denied His Constitutional and Statutory Rights to be Present at All Stages of His Trial

#### 1. Defendant's Use of Affidavits Outside the Record

The defendant next claims that he expressly forbade his trial attorney to file a motion to sever his case from that of his codefendant cousin, who had been indicted on similar charges. He also alleges that his trial attorney lied to him by indicating that no such motion would be filed, but his attorney nevertheless filed such a motion anyway. The defendant contends that after he discovered that his trial had been severed from his cousin's trial, his attorney lied to him again by asserting that the trial justice severed the trials on his own initiative. In support of these allegations, defendant relies in large part upon his own affidavits—filed for the first time with this Court—which he attached to his brief.

The defendant further claims that the trial justice's granting of his motion to sever his trial from that of his codefendant seriously undermined his ability to defend himself by depriving him of the opportuni-

ty to develop trial strategy and to formulate litigation tactics with his attorney. He asserts that "the phantom motion to sever that was filed under bizarre circumstances, was a material stage of the proceeding which had a substantial effect on the defendant's ability to communicate with his attorney, trial strategy and apparent ability to defend against the charges." Significantly, he does not elucidate how his attorney's filing of the motion to sever undermined his ability to communicate with his attorney, and we are at a loss to fathom how this could be so. However, in the next section of his appellate brief, defendant also raises the issue of ineffective assistance of counsel, and alleges that his attorney did not want to try the case against him (despite filing a motion to sever that, if granted, would guarantee that defendant's lawyer would try the case alone). Moreover, defendant contends that if he had received the aggressive trial defense his cousin had received, the result of his trial would have been different.

 To a large extent defendant bases his argument on his own affidavits, which were signed and witnessed years after his trial when his brief was filed with this Court, and which he has attached as exhibits to his brief. These affidavits, which contain self-serving conclusory statements, are not part of the trial court's record and thus cannot be considered by this Court. *American Hoechst Corp. v. Carr*, 621 A.2d 710, 712 (R.I.1993) (holding that even when appellate review is *de novo*, it is limited to the record as developed below). *See also Hudson v. Napolitano*, 575 A.2d 187, 189 (R.I.1990) (holding that "[a]ttempting to cure a defect for the first time in a proffer of evidence before the appellate court is unavailing"). In a similar situation to this case, a party submitted an affidavit to this Court in support of its appellate contentions. In refusing to consider that affidavit, this Court stated that the "case must be decided upon the evidence introduced in the superior court."

*Princess Ring Co. v. Home Ins. Co.*, 163 A. 181, 181 (R.I.1932). Likewise, we will not consider submissions by defendant that were not introduced or even mentioned before the Superior Court and have no basis in the trial court's record. It is well settled that arguments raised for the first time on appeal are not properly preserved for appellate review. *See State v. Donato*, 592 A.2d 140, 141 (R.I.1991). None of defendant's objections to the motion to sever was raised below, despite defendant's acknowledgment that he learned that the trial justice granted the motion to sever before trial. Moreover, his own attorney filed the motion, and defendant proceeded to trial without alerting the trial justice that he objected to having his case severed from the charges against his cousin. Finally, the record as developed below indicates that the disparate sentencing between defendant and his cousin had its basis in the different facts and circumstances of each defendant's respective situation.

First, the record indicates that defendant filed a motion to sever on January 26, 1994. The defendant was, in fact, tried separately from his original codefendant. However, while defendant blames his harsher sentence on the granting of the requested severance, the record reflects a different reason for defendant's disparate disposition. The prosecutor explained the difference between defendant and his codefendant cousin during defendant's sentencing, as follows:

"I would like to take a moment to point out, although the co-defendant received a lower sentence than I'm going to ask the Court to impose, it's because the two stand in a different light, it's because it's like night and day between the Defendant and co-defendant, despite what the Defendant's version of events are [*sic*]. The co-defendant, the State's case against the co-defendant was not as strong as the State's case against this Defendant. * * * This [defendant] was involved in the robberies and I believe he wore a knit hat but nothing concealing his face, and there is strong positive identification of this particular Defendant. The second robbery, it's this Defendant obviously as I referred to earlier that went in the liquor store by himself and robbed that store. * * * And most notably, the co-defendant I don't believe had the horrific record and history that this Defendant has with the Court system, again not only in Rhode Island but in Massachusetts. I suggest those are key difference [*sic*] between those two individuals and they must be treated differently in that respect."

It is only now, after his conviction, that defendant contends that he had no knowledge of the severance motion when it was filed and no communication with his attorney on this score. The defendant also now claims that his attorney did not want to try the case and was unprepared for trial. However, this argument is undermined by the very fact that defendant's counsel filed a motion to sever, thereby guaranteeing that, if the motion was granted, he would assume sole responsibility for trying the case without the assistance of the cousin's attorney.

### 2. *Defendant's Absence from the Conference Concerning His Pretrial Motion to Sever*

We hold that defendant's absence from the pretrial chambers conference during which the court granted his motion to sever did not impinge upon his right to a fair trial. Pursuant to the Fourteenth Amendment's Due Process Clause, a defendant's presence at a particular stage of the pretrial proceedings is a condition of due process " 'to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' " *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631, 647 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107–08, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679 (1934)). Although Rule 43 of the Superior Court Rules of Criminal

Procedure[3] grants broader rights to a defendant, it, too, only requires the defendant to be present at every stage of the trial that concerns "the guilt or innocence of defendant or affect[s] his ability to defend against the charges against him." *State v. LaChappelle*, 424 A.2d 1039, 1046 (R.I.1981).

In *LaChappelle*, the trial justice and a reluctant prosecution witness held an in-chambers conference to determine whether the witness understood the consequences of failing to testify and to determine the underlying reason for her unwillingness to respond to defense counsel's questions. *Id.* Following his conviction defendant appealed based upon his claim that his absence from the in-chambers conference violated his Sixth and Fourteenth Amendment rights under the United States Constitution, as well as his rights under art. 1, sec. 10, of the Rhode Island Constitution and Rule 43. With respect to the Fourteenth Amendment claim, this Court ruled that the conference did not bear any reasonably substantial relationship to defendant's opportunity to defend against the charges, nor did his absence deny him a fair and just hearing on the charges because he "was present * * * at all times when the complainant testified" before the trier of fact. *LaChappelle*, 424 A.2d at 1044. Likewise, disposing of the motion to sever during a pretrial chambers conference did not violate Rule 43 because the conference was not considered by the Court to be a "stage of the trial" that related to either defendant's guilt or innocence, nor did it affect defendant's ability to defend himself against the pending charges. *Id.* at 1046. *See also State v. Souza*, 425 A.2d 893, 901 (R.I. 1981) (holding that the absence of the defendant in the courtroom during a supplemental jury instruction was not a violation of defendant's rights).

The defendant relies heavily upon *People v. Spotford*, 85 N.Y.2d 593, 627 N.Y.S.2d 295, 650 N.E.2d 1296 (1995), for the proposition that defendants have statutory and constitutional rights to be present at all material stages of a criminal trial, including ancillary pretrial proceedings. However, the court in *Spotford* ruled that a defendant has the right to be present at an ancillary proceeding only when he has "something valuable to contribute" and his presence would have a substantial effect on his ability to defend himself. *Id.* 627 N.Y.S.2d 295, 650 N.E.2d at 1297 (quoting *People v. Morales*, 80 N.Y.2d 450, 591 N.Y.S.2d 825, 606 N.E.2d 953, 957 (1992)). The pretrial hearing in *Spotford* involved a hearing to determine whether alleged previous bad acts could be used as direct evidence of the defendant's guilt. As such, the court held that because it was a factual hearing and the defendant himself was in the best position to deny or controvert the prosecutor's "unrebutted view of the facts the defendant's presence was required." 627 N.Y.S.2d 295, 650 N.E.2d at 1298. Unlike a factual hearing at which defendant's presence is required, the motion to sever in this case was procedural in nature. *See State v. Morton*, 155 N.J. 383, 715 A.2d 228, 260 (1998). In *Morton*, the defendant appealed his convictions for murder and robbery on numerous grounds, including his absence from a pretrial motion to sever his trial from that of his codefendants. The court found that the trial justice did not commit reversible error by conducting the hearing without the presence of the defendant because the motion focused on questions of law. Thus, the traditional justifications underlying the

---

3. Rule 43 of the Superior Court Rules of Criminal Procedure provides in pertinent part:

> "**Presence of the defendant.**—The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, except that the defendant may be excluded from the proceedings if, after appropriate warning, the defendant persists in conducting himself or herself in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with him or her in the courtroom."

defendant's right to be present at all material steps of the trial did not apply to this type of an ancillary hearing. *Id.* Those traditional justifications, the court stated, included the defendant's "right to assist counsel in his defense, to assist in the cross-examination of witnesses, and to influence the jury psychologically by his presence." *Id.* Similarly, those justifications were absent in the case at bar with respect to the chambers conference during which the court granted defendant's motion to sever. For these reasons, defendant had no constitutional or other right to be present when the court granted his pretrial motion to sever. .

### C. *Ineffective Assistance of Counsel*

Finally, defendant claims that his conviction should be reversed on direct appeal for ineffective assistance of counsel because extraordinary circumstances exist and the alleged ineffective assistance is clear from the record. In support of this proposition defendant relies upon *United States v. Gallegos,* 108 F.3d 1272 (10th Cir.1997). In that case the defendant asserted her conflict-of-interest argument at trial and in a post-trial motion, and the District Court had considered the merits of her argument and denied her claim. *Id.* at 1280. Therefore, the ineffectiveness-of-counsel claim was well documented in the record and the Court of Appeals had the ability to review the issue on direct appeal. *Id.* Here, however, there is no such well-documented record to review.

■ This Court repeatedly has held that it will not consider a claim of ineffectiveness of counsel that is raised for the first time on a direct appeal. *See State v. Malstrom,* 672 A.2d 448, 450 (R.I.1996); *State v. Heath,* 665 A.2d 1336, 1337–38 (R.I.1995); *State v. Gibbons,* 418 A.2d 830, 839 (R.I.1980). Such matters must be pursued in an application for post-conviction relief pursuant to G.L.1956 § 10–9.1–1.[4]

There has been no application here for post-conviction relief.

■ Moreover, and contrary to the defendant's claim, it is not at all apparent from the record that defendant received ineffective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984) the United States Supreme Court set forth the standard for determining whether counsel has been ineffective. Under the two-part test announced in *Strickland,* defendant must show both that "counsel made errors so serious that counsel was not functioning as 'the counsel' guaranteed the defendant by the Sixth Amendment," and that "the deficient performance prejudiced the defense [and] deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* On the present record, the defendant's counsel in the case at bar did not make any glaring errors that would satisfy the *Strickland* standard. Most importantly, his contested motion to sever appeared to be a sound, strategic gambit under the circumstances of this case. Defense counsel filed several pretrial motions on defendant's behalf, and appears to have adequately cross-examined the prosecution's witnesses at trial. Given the defendant's confession and the identification of the defendant by the robbery victims, it appears to us, on this limited record, that it is highly unlikely that the defendant received ineffective assistance of counsel. In any event we cannot entertain his claim that his counsel was ineffective on this direct appeal.

### Conclusion

For the foregoing reasons, we deny the defendant's appeal and affirm the judgment of conviction.

---

4. Under G.L.1956 § 10–9.1–1(a)(1), persons claiming that their criminal convictions were obtained "in violation of the constitution of the United States or the constitution or laws of this state" may file applications for post-conviction relief.