STATE

v.

Milton APONTE.

No. 2000–234–C.A.

Supreme Court of Rhode Island.

June 20, 2002.

Jane M. McSoley, Providence, for Plaintiff.

Paula Rosin/Paula Lynch Hardiman, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Court for oral argument on May 14, 2002, pursuant to the appeal of the defendant, Milton Aponte (defendant), from a judgment of conviction for first-degree child molestation sexual assault. The defendant argues that the trial justice erred in denying his motion to suppress incriminating statements he gave to the police in which he admitted to sexually molesting a fifteen-month-old girl. We deny and dismiss the appeal and affirm the conviction.

### Facts and Travel

On the evening of August 13, 1997, a young mother, Karen Fedorak (Fedorak), found her fifteen-month-old daughter screaming in her crib, clothed in a blood-soaked diaper. It was subsequently determined by hospital emergency personnel that the baby had suffered a brutal sexual assault, resulting in visible lacerations on her external genitalia, a third-degree perineal laceration that ripped through the rear wall of her vagina and extended into the retroperitoneal space behind the abdominal cavity, nearly reaching the rectum with fissures indicative of attempted anal penetration. Three surgeries have already been performed on the little girl, and it is likely that she will need additional surgery to repair these horrific internal injuries.

Immediately after this brutal assault, members of the Woonsocket Police Department began to investigate those individuals who Fedorak identified as having been in her apartment before the assault, including defendant, Fedorak's boyfriend, who was questioned at approximately 2 a.m. Statements taken from several people the next day revealed that three of the guests at Fedorak's home had access to the child before the assault. Police re-interviewed two of the three individuals, but none had been singled out as a prime suspect. Detectives Landry and Moreau (Landry and Moreau) were responsible for re-interviewing defendant. Because they did not know where defendant lived, the detectives asked Fedorak to call them if defendant should appear at her home. Upon receipt of Fedorak's call, plainclothes officers arrived at Fedorak's apartment in an unmarked police car and asked defendant whether he would accompany them to the station to answer some additional questions. The defendant readily agreed to do so.

The state's account of the following events differs substantially from defendant's version. Landry and Moreau testified that they escorted defendant to their vehicle and took him to the station, but at no time was defendant handcuffed or placed under arrest. The defendant acknowledged during his trial testimony that he was not handcuffed at any point during his trip to the station. According to the officers, they repeatedly advised defendant that he was under no obligation to accompany them to the station and that he was not under arrest. Additionally, when defendant told Landry and Moreau that he

had an appointment with his probation officer later that afternoon, they assured him that he would be able to keep that appointment. Upon arriving at the station, Landry and Moreau again reminded defendant that he was there voluntarily and that he was free to leave at any time. The defendant testified, however, that when he arrived at Fedorak's apartment, he was frisked, grabbed by both upper arms and placed in the unmarked police car, where he was left unattended for about five minutes. He testified that he sat in the backseat with Moreau while Landry drove to the station. The defendant alleges that he was escorted into the station in the same fashion and taken to an interrogation room. Landry and Moreau testified that at 12:35 p.m., they began a general discussion with defendant about the events of the previous evening at Fedorak's apartment. At this point the discussion was considered by the detectives to be an interview and not an interrogation, so it was neither recorded nor transcribed. The defendant, however, appeared nervous and evasive and continued to deny any knowledge of the sexual assault on the little girl. Additionally, defendant made statements that were inconsistent with his interview the previous evening, leading the detectives to conclude that defendant was lying. As a result, defendant was advised of his rights, including his right to remain silent, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant said he understood those rights and was presented with a rights form, which he signed at 12:45 p.m.

During the next few hours, various officers went to the interview room to question defendant. The defendant changed his story several times during the course of the afternoon, leading the detectives to conclude that he was untruthful. In an effort to persuade defendant to tell the truth, the detectives changed tactics.

However, during this entire period, defendant never requested an attorney, nor did he attempt to terminate the interview and leave the station, avenues that were available to him at any point. He claims that as a result of the constant questions, accusations of lying and verbal intimidation tactics that he alleges the detectives employed, he felt so intimidated and scared that he did not think he was free to leave. Indeed, Detective Roy (Roy) acknowledged yelling at defendant and pacing around the room, but he flatly denied ever touching defendant or threatening him in any manner. Roy admitted that he was convinced of defendant's involvement in the assault on the baby, but he lacked sufficient evidence to arrest him at that time. Later, during questioning by Detective Houle (Houle), defendant agreed to disclose his role in the commission of this crime. At approximately 4 p.m., defendant admitted that when Fedorak left the apartment to go to the store, he went into the baby's room, pulled off her diaper and inserted two fingers into the baby's vagina. At this point Roy and Houle asked defendant whether he would give a taped statement. They reminded defendant that he had the right to refuse to speak to them any more. After being reminded of the constitutional rights he had waived earlier that afternoon, defendant agreed to give a taped statement to the detectives. The defendant detailed how he inserted both the index and middle fingers of his right hand "as far as they could go" in and out of the baby's vagina for two minutes, until the baby woke up, at which point defendant immediately repositioned the same diaper on the child. As the interview continued, the tape was changed to the second side and, although defendant admitted to the truth of the statements he already had made, he stated that he "[didn't] want to talk about it anymore" because he was

"getting too–too nervous." The interview immediately concluded at that time.

## Issues

The defendant raises four issues in his appeal. First, he claims that the trial justice erred in denying his motion to suppress the incriminating statement he gave to the police. He argues that he confessed during a custodial interrogation as the direct result of an arrest made without probable cause. In addition, defendant maintains that the police used coercive tactics to obtain his involuntary confession. Second, defendant argues that the trial justice erred when he instructed the jury that when determining the voluntariness of his confession, the jurors may disregard some of the behavior exhibited by the police. The defendant next assigns error to the denial of a defense motion to pass the case as a result of testimony regarding drug use at Fedorak's apartment during the evening of the assault. The defendant claims this testimony was not relevant and was highly prejudicial. Finally, defendant argues that the trial justice committed several errors of law in instructing the jury. Specifically, defendant assigns as error the instruction given relative to the intent required for first-degree child molestation sexual assault; second, he assigns as error the failure to instruct the jury on the offense of assault with a dangerous weapon; and the denial of defendant's motions for judgment of acquittal.

## Motion to Suppress

We review the denial of a motion to suppress a confession with "deference to the trial court's factual findings concerning the historical events pertaining to the confession by using a 'clearly erroneous' standard of review." *State v. Brouillard,* 745 A.2d 759, 762 (R.I.2000) (quoting *State v. Carter,* 744 A.2d 839, 845 (R.I. 2000)). When reviewing the voluntariness of a confession, however, this Court utilizes a *de novo* review to determine whether the trial justice overlooked or misconceived material evidence relative to any constitutional violations. *State v. Nardolillo,* 698 A.2d 195, 200 (R.I.1997). A confession will be admissible against a defendant only "if the state proves by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his constitutional rights, including his right to remain silent and to obtain legal representation." *Brouillard,* 745 A.2d at 762.

On appeal, defendant argues that the trial justice erred in denying his motion to suppress the incriminating statement as the product of police coercion that was obtained in exploitation of an unlawful arrest made without probable cause. The trial justice referred to *State v. Hobson,* 648 A.2d 1369 (R.I.1994) and declared that "the decisive test for determining whether a person is in custody for purposes of receiving Miranda warnings is whether the person was formally arrested or whether the person's freedom of movement [was] restricted to the degree associated with formal arrest." The trial justice found that when asked at Fedorak's apartment to accompany Landry and Moreau to the station to answer further questions about the assault, defendant "did not feel any compulsion or coercion at that time." However, the trial justice did not find it necessary to resolve whether this amounted to an arrest "because there were no questions put to the defendant" at this time. He found that the police developed a suspicion based on the disparity between defendant's statements to police and other witnesses' interviews, particularly Fedorak's account of the evening. Noting that probable cause is a lower standard of proof

than proof beyond a reasonable doubt,[1] the trial justice concluded that, at some point during their interview, the police obtained probable cause to arrest defendant, but "well before Lieutenant Houle talked to him, and certainly well before that tape-recorded statement was given." According to the trial justice, once the police knew that a crime had occurred and had determined that defendant had the time and opportunity to commit this assault, they had probable cause to arrest defendant. This conclusion, however, does not answer the overarching issue of whether, at the time defendant accompanied the officers to the Woonsocket police station, the police effectuated a custodial arrest of defendant such that the Fourth Amendment was implicated. *See State v. Guzman*, 752 A.2d 1, 4 (R.I.2000) ("the legality of an arrest is to be determined by the existence of probable cause at the time of the arrest and not by what subsequent events may disclose").

 The defendant vigorously has challenged the trial justice's findings on probable cause to arrest. The state, while arguing that the trial justice's decision was correct, also argues, as it did to the trial justice, that when defendant voluntarily accompanied the police officers to the Woonsocket police station and spoke with detectives, defendant was not in police custody. We previously have held that in appropriate circumstances, we will exercise our prerogative "to affirm a determination of a trial justice 'on grounds different from those enunciated in his or her decision.'" *Ogden v. Rath*, 755 A.2d 795, 798 (R.I.2000) (quoting *State v. Pena Lora*, 746 A.2d 113, 118 (R.I.2000)). After a careful review of the record in this case, we are satisfied that defendant's presence

in the Woonsocket police station did not rise to the level of a custodial interrogation. We look to several factors to determine whether an individual was under arrest at a particular time. These include the extent to which the person's freedom of movement was curtailed, the belief of a reasonable person under like circumstances, the degree of force used by law enforcement and whether the person had the option of refusing to accompany the police. *State v. Kryla*, 742 A.2d 1178, 1181 (R.I.1999); *State v. Bailey*, 417 A.2d 915, 917–18 (R.I.1980).

The defendant admitted that he voluntarily agreed to accompany Landry and Moreau to the station and, the testimony reveals, Landry informed defendant that he "didn't have to be [at the station] * * * and he could leave if he wanted." Even Roy admitted that had defendant said that he wanted to leave during the questioning, he would have been able to do so because the police had no physical evidence to arrest him. We have held that "persistent" questioning by the police does not convert the situation into a custodial interrogation. *State v. Ferola*, 518 A.2d 1339, 1344 (R.I. 1986). Based upon the United States Supreme Court's holding in *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977), we previously have held that neither the giving of *Miranda* warnings nor the questioning of a defendant at a police station automatically transforms the setting into a custodial one. *State v. Kennedy*, 569 A.2d 4, 7 (R.I.1990). By his own admission, defendant never attempted to leave nor did he indicate a desire to terminate the interview until after the officers had recorded his statement. Further, there is no evidence that the police exerted any force in either

1. The trial justice defined probable cause as being the "amount of evidence in the possession of a reasonably prudent police officer that would lead him or her to conclude that the suspect in all likelihood or in all probability committed the crime."

transporting defendant to the station or during the interview. Although he was afraid of Roy, defendant admits that none of the detectives exhibited any physical force or coercion towards him.

The defendant argues that a remand is appropriate to resolve factual disputes surrounding his arrival at the police station in the company of Landry and Moreau, an issue that was not decided by the hearing justice. We deem this to be unnecessary, however, because were we to accept all of defendant's testimony as true, including his assertion that he was frisked and physically manhandled by the officers as he was led to the police car and again into the station, this evidence still does not amount to a custodial interrogation. According to defendant's own testimony, Landry and Moreau asked him to voluntarily accompany them to the station, they assured him that he would be able to meet his probation officer later that day and he agreed to go with them. Significantly, defendant was left alone without restraints in the unmarked police vehicle for at least five minutes. This evidence defies the suggestion of an arrest. The defendant was not handcuffed at any point and was advised more than once that his presence at the station was completely voluntary and that he could leave at any time. Thus, even when considered in accordance with defendant's version of these events, we are satisfied that he voluntarily accompanied the officers to the Woonsocket police station and was not placed in custody.

■ The final consideration is whether a reasonable person would have understood that he was free to leave under like circumstances. The Fourth Amendment prohibits seizures that " 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Ferola*, 518 A.2d at 1343. Although defendant maintained that he did not feel as though he was free to leave, his subjective belief alone is insufficient to establish custody. The appropriate test is not what defendant thought but what a reasonable person would think in similar circumstances. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984); *Kryla*, 742 A.2d at 1181–82. The trial justice found that defendant felt no "compulsion or coercion" to go the police station and answer Landry and Moreau's questions, and he acknowledged that he was told upon arrival there that he was there voluntarily and could leave at any time. We are satisfied that a reasonable person in these circumstances would have understood that he was not in custody and was free to leave.

Because we affirm the trial justice's holding on this alternate basis, we need not reach the issue of whether the police had probable cause to arrest defendant.

**Motion to Pass**

■ The defendant asserts that the trial justice erred when he denied the defense motion to pass the case as a result of the unexpected testimony, by a state witness, about marijuana use at Fedorak's apartment before the assault. The witness stated that he thought "everyone" was "smoking weed" on the back porch of Fedorak's apartment on the night of the assault. The defendant argues that this testimony was highly prejudicial and of no relevance. Upon hearing this testimony, defense counsel moved for a mistrial, saying he had no idea that evidence about the alleged use of drugs that night would be introduced at trial. The trial justice agreed with the prosecution that the impact, if any, from the mention of the use of marijuana would be minimal and denied defendant's motion to pass. He then gave the jury a cautionary instruction stating

that the jury "may not draw any inference whatsoever that because someone * * * uses marijuana, that that necessarily predisposes them in any way, shape or form to commit the kind of crime that is being discussed in this case." No objection was made by defense counsel to this instruction.

■ The refusal of a trial justice to pass a case is accorded great deference and will not be disturbed on appeal unless it is shown to be clearly wrong. *State v. Tempest*, 651 A.2d 1198, 1207 (R.I.1995). "It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Suero*, 721 A.2d 426, 429 (R.I. 1998); *State v. Figueroa*, 673 A.2d 1084, 1091 (R.I.1996). We often have stated that the trial justice "possesses 'a "front-row seat" ' at the trial and can best determine the effect of the improvident remarks upon the jury.' " *Figueroa*, 673 A.2d at 1091 (quoting *Tempest*, 651 A.2d at 1207).

In a similar case, this Court upheld a trial justice's denial of a motion to pass because the reference to marijuana by the witness was "inadvertent" and, because it was made without reference to a specific user, was "not sufficient to inflame the jury and require a new trial." *State v. Botelho*, 753 A.2d 343, 349 (R.I.2000). We are satisfied that this ruling is equally applicable here as well. Additionally, we conclude that the cautionary instruction given by the trial justice was adequate.

### Jury Instructions

■ Relative to the issue of the jury instructions given by the trial justice, "General Laws 1956 § 8-2-38 requires the trial justice to instruct the jury on the law to be applied to the issues raised by the parties." *State v. Lynch*, 770 A.2d 840, 846 (R.I.2001). "The trial justice may instruct the jury in his or her own words as long as the charge sufficiently addresses the requested instructions and correctly states the applicable law." *State v. Mastracchio*, 546 A.2d 165, 173 (R.I.1988) (citing *State v. Tooher*, 542 A.2d 1084, 1088 (R.I.1988)).

■ When a defendant challenges the voluntariness of his statement, a trial justice engages in a two-step procedure in which, as a preliminary matter, the trial justice determines, by clear and convincing evidence, that the statement or confession was lawfully obtained. *State v. Killay*, 430 A.2d 418, 421 (R.I.1981). Once the trial justice determines, as a matter of law, that the confession was voluntary, the issue is then put to the jury. *State v. Tassone*, 749 A.2d 1112, 1118 (R.I.2000). The trial justice is required to instruct the jury that, based on the totality of the circumstances, "it must find by clear and convincing evidence that the defendant's confession was voluntary, and that defendant had been advised of his constitutional guarantee against self-incrimination (the *Miranda* Rights so-called), before the jury may consider the statement as evidence." *Id.* On appeal, this instruction is reviewed in its entirety. *Id.*

■ Having determined, as a matter of law, that defendant's confession was voluntary, the trial justice submitted the issue to the jury. The defendant challenges the following portion of the trial justice's jury instruction:

"The police, in questioning a suspect at the station, just that very situation carries with it the notion of some—some pressure or coercion. But, just that mere fact that you're at the police station and being talked to by police officers, being interrogated by police officers, doesn't mean that that by itself is coercion. *Or even if a police officer speaks in a loud tone from time to time,*

*that by and of itself, does not mean that the will of the person giving a statement has been overridden and now they're doing something against their—their free will."* (Emphasis added.) [2]

We are satisfied that this instruction, based on the totality of the circumstances, is appropriate and a correct recitation of the law. As the trial justice stated in his decision on the motion to suppress, "there [is] no fundamental constitutional right [of] which I'm aware, that entitles a suspect in a criminal case to have on each and every question the police officer speak to him in a kindly, avuncular fashion." The trial justice specified that while an interrogation "marked only by yelling that goes on for hours and hours" would possibly cause concern, that was not the circumstance here. We agree that the interview in this case was "not especially lengthy" and the yelling or raising of voices was "sporadic." Further, we are satisfied that the trial justice did not instruct the jurors that they were to disregard evidence of raised voices as part of the environment in which defendant confessed. In fact he specifically told them to consider it. He merely stated that this evidence, without more, is insufficient to establish coercion. Moreover, because we look to the charge as a whole, and do not examine a single portion in isolation, *State v. Fernandes*, 783 A.2d 913, 916 (R.I.2001), we conclude that the trial justice did not err in his instructions to the jury.

### Child Molestation Sexual Assault

 At trial, defense counsel moved for a judgment of acquittal based upon the prosecution's failure to establish that defendant committed the crime for the purpose of sexual arousal or gratification. The defendant also challenges on appeal the failure of the trial justice to instruct on the element of sexual gratification, arousal and assault. The trial justice denied defendant's motions for a judgment of acquittal and concluded that although in cases in which there was no injury "it would be incumbent upon the State to produce some evidence of sexual gratification or arousal being a purpose," when there is a serious injury requiring multiple surgeries, then "the assault factor, as referenced by the legislative statute is appropriate." He went on to say that although our case law has not mentioned an intent to commit an assault, it falls into the *mens rea* required to convict on a charge of first-degree child molestation.

In *State v. Griffith*, 660 A.2d 704, 706 (R.I.1995), we vacated defendant's conviction because we found that the crime of first-degree child molestation sexual assault included an implied *mens rea* that required the state to prove that defendant committed the assault for purposes of sexual arousal or gratification. We held that to be convicted of this offense, and to avoid convictions for otherwise innocent or accidental touchings, this *mens rea* was an implied element of the criminal charge and the trial justice's failure to so instruct was grounds to vacate the conviction. *Id.* at 707. We later narrowed this holding in *State v. Bryant*, 670 A.2d 776, 783 (R.I. 1996) and *State v. Yanez*, 716 A.2d 759, 767

---

2. We are not convinced that counsel's specific objection encompasses the issue raised on appeal. The objection was:

"I also object to the court's instruction relating to the voluntariness of the confession, and saying separate and apart by itself the officers raising their voices, speaking in a loud voice is not anything that they can consider. I object to that instruction. I know of no case law that permits officers to speak in a loud voice to a suspect. Most of the cases relate to misrepresenting facts or lying to a suspect, or—and I've not read a case where they allow officers to speak in a loud voice. So I object to that instruction."

(R.I.1998) and held that a *mens rea* instruction was not necessary in situations in which there has been purposeful penile penetration because that type of sexual penetration precludes an innocent touching. We thus limited our holding in *Griffith* to cases involving digital penetration.

Our concern in *Griffith* was that in the absence of an instruction concerning the *mens rea* element of sexual assault, defendants could be convicted for accidental or innocent contact with a child. *Griffith,* 660 A.2d at 707. In instances of penile penetration, this concern is absent because the very nature of the act eliminates the risk of an accidental or innocent penetration. However, in the context of this case, there is no danger that defendant could be found criminally culpable for an otherwise innocent touching. We conclude that this sustained assault, during which defendant repeatedly manipulated his hand into the baby's vagina, is a digital penetration that cannot be confused with an accidental or innocent touching. The defendant admitted that he intentionally pulled the baby's diaper down and repeatedly inserted his fingers into her vagina to the knuckles and moved his fingers in and out for about two minutes until the baby awoke. The very act of manipulating the fingers in and out of a child's vagina is a sexual act and precludes an innocent touching. The defendant was neither changing the diaper nor was he bathing the baby. Therefore, the principles enunciated in *Griffith* do not apply to vaginal penetrations of such force and duration that could never be confused with the normal activities of parenting or child care, particularly in light of these horrific injuries. Thus, it is evident that this assault was committed for no other reason than abhorrent sexual arousal. We therefore affirm the trial justice's denial of the motion for judgment of acquittal.

Further, we are satisfied that the jury instructions adequately reflect the law to be applied to the evidence in this case. The jury was informed that the state must prove the act was done for sexual pleasure, arousal or assault and that they could consider the very nature of the act and what was done to the child in determining defendant's intent.

Because we affirm the trial justice's denial of the defendant's motion for acquittal and deem that there was no error in the trial justice's instruction to the jury, we do not reach the issue of the instruction on the lesser included offense of assault with a dangerous weapon.

## Conclusion

For the reasons stated above, we deny and dismiss the defendant's appeal and affirm the judgment of conviction. The papers in this case are remanded to the Superior Court.