**Supreme Court**

No. 2012-251-M.P.
(21-2011-3139)

State of Rhode Island ex rel.     :
  Town of Little Compton

v.     :

David Simmons.     :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State of Rhode Island ex rel.    :
   Town of Little Compton

            v.          :

David Simmons.         :


Present:  Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**   In the early morning hours on the day before Christmas, two police officers from Little Compton had a discussion with the defendant, David Simmons, in Tiverton about a motor-vehicle accident that had occurred in Little Compton.  The two officers transported the defendant in a police cruiser back to the scene, and once there, they administered a series of field-sobriety tests, which the defendant failed.  As a result, Simmons was charged with driving under the influence of liquor or drugs in violation of G.L. 1956 § 31-27-2; failure to maintain proper control of a motor vehicle, in violation of G.L. 1956 § 31-14-1; and failing to report an accident, in violation of G.L. 1956 § 31-26-3.  Before the District Court, the defendant moved to dismiss the case, contending that the officers had unlawfully arrested him in Tiverton, where they lacked the authority to do so.  The trial judge agreed and suppressed all the evidence; the inevitable result was a dismissal of the charges.  The town filed a writ of

certiorari challenging the dismissal, which we granted on December 22, 2012. On review in this Court, Little Compton argues that the trial judge erred in granting the motion to dismiss because the defendant was not arrested in Tiverton, and in fact, was not arrested until he and the police officers had returned to Little Compton. On January 22, 2014, this case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this petition for certiorari should not summarily be decided. We have considered the record and the written and oral submissions of the parties, conclude that cause has not been shown, and proceed to decide the case without further briefing or argument. For the reasons set forth in this opinion, we quash the judgment of the District Court.

**Facts and Travel**

Early in the morning of December 24, 2011, three police officers from the Little Compton police department were assisting with a rescue call on Old Stone Church Road in that town. At approximately 3:40 a.m., two of those officers, Officer Farrar and Corporal Harris, saw a man running down the street clad in shorts and a T-shirt. About five minutes later, the Little Compton dispatcher informed the officers that a one-car accident had occurred on Colebrook Road and that the driver was nowhere to be found. The third officer, Corporal Hawes, reported to the collision site while Farrar and Harris decided to pursue the erstwhile jogger they had seen some moments before, surmising that he may have been involved in the accident.

Crossing into the town of Tiverton, the officers spotted the still-running defendant and pulled the cruiser alongside him. Farrar testified that he asked defendant if he was out for a jog; defendant answered that he was. Harris then asked defendant if he had just been in an accident and he admitted that he had. Harris got out of the police cruiser, approached defendant, patted him down "for officer safety," and asked him why he had left the accident. During this

interaction, Harris noticed a "strong odor of alcohol coming from [defendant's] breath and that Mr. Simmons'[s] eyes were extremely bloodshot and watery." Simmons then asked the officers what or whom he had hit and whether anyone had been injured. Harris testified that she told defendant that she did not "believe anybody had been hurt, but that we needed to respond back to the scene." Simmons indicated that he would return with them, and he got into the backseat of the police cruiser, which, as is typical of such vehicles, was separated from the front by a partition. The officers neither handcuffed defendant nor read him the rights outlined in Miranda v. Arizona, 384 U.S. 436 (1966). However, as is often the case, once he was in the back of the police cruiser, Simmons was unable to open the door from the inside in the event he desired to get out.

When Simmons and the two officers returned to the scene of the accident in Little Compton, defendant was released from the back of the cruiser and was advised to seek medical attention from the on-site medical personnel, which he refused. Significantly, he was not restrained in any way. Harris then administered a series of field-sobriety tests to defendant that he failed. Only then was defendant read his rights, handcuffed, and transported to the Little Compton police station, where he was charged with driving under the influence in violation of § 31-27-2.

On January 9, 2012, defendant filed a motion in the District Court to dismiss due to an unlawful arrest, arguing that the Little Compton police officers exceeded their authority because they arrested him in Tiverton.[1] The hearing for the motion to dismiss was held on July 27, 2012;

---

[1] It should be noted that two statutes authorize police officers to effect an arrest outside the boundaries of their municipality. See G.L. 1956 § 12-7-19 (granting authority to arrest in any city or town if police are in close pursuit of a suspect); G.L. 1956 § 45-42-1(a) (bestowing upon police officers an emergency police power upon request of assistance from the police chief of any city or town).

the District Court judge rendered her decision on August 24, 2012. In arriving at her decision, the trial judge dutifully considered the factors outlined in State v. Bailey, 417 A.2d 915 (R.I. 1980), to determine if defendant had been arrested in Tiverton. She concluded that the officers' actions had amounted to an arrest because (1) once placed in the back of the cruiser, defendant could not voluntarily leave it; (2) the police had not observed defendant commit any crimes; and (3) the police had not informed defendant that he could decline to accompany them back to the collision site in Little Compton. Therefore, the trial judge ruled that the arrest was unlawful, and consequently, she suppressed all the evidence obtained from that point. With the evidence suppressed, the trial judge dismissed the case. The town moved to stay the proceedings and exercised its prerogative to file a petition for writ of certiorari to this Court, which we granted.

**Standard of Review**

"Our review of a case on certiorari is limited to an examination of 'the record to determine if an error of law has been committed.'" State v. Poulin, 66 A.3d 419, 423 (R.I. 2013) (quoting State v. Greenberg, 951 A.2d 481, 489 (R.I. 2008)). "In addition to examining the record for judicial error, 'we inspect the record to discern if there is any legally competent evidence to support the findings of the hearing justice below.'" Id. (quoting Brown v. State, 841 A.2d 1116, 1121 (R.I. 2004)). The Court does "not weigh the evidence on certiorari, but only conduct[s a] review to examine questions of law raised in the petition." WMS Gaming, Inc. v. Sullivan, 6 A.3d 1104, 1111 (R.I. 2010) (quoting Greenberg, 951 A.2d at 489). We review questions of law de novo. Id. (citing Lynch v. Rhode Island Department of Environmental Management, 994 A.2d 64, 70 (R.I. 2010)).

- 4 -

**Discussion**

On certiorari before this Court, the town argues that the trial judge committed reversible error when she granted defendant's motion to dismiss. The town contends that the arrest of defendant occurred not in Tiverton, but in Little Compton, and not until after he failed the field-sobriety tests. Thus, the town maintains that the interaction between defendant and police in Tiverton did not constitute an arrest.

According to G.L. 1956 § 12-7-7, "[a]n arrest is made by the restraint of the person to be arrested or by his or her submission of his or her person to the custody of the person making the arrest." In Bailey, 417 A.2d at 917-18, we outlined several factors we consider to determine if an arrest has been made. "These [factors] include the extent to which the person's freedom of movement was curtailed, the belief of a reasonable person under like circumstances, the degree of force used by law enforcement and whether the person had the option of refusing to accompany the police." State v. Aponte, 800 A.2d 420, 425 (R.I. 2002) (citing State v. Kryla, 742 A.2d 1178, 1181 (R.I. 1999); Bailey, 417 A.2d at 917-18). It is important to note, however, that we have cautioned that "[n]o one factor is dispositive. Rather we analyze the interchange between a suspect and the authorities pragmatically to determine whether an arrest or seizure has in fact occurred." State v. Collins, 543 A.2d 641, 650 (R.I. 1988). Although the trial judge correctly cited the Bailey factors and engaged in a thoughtful analysis, we disagree with her conclusions and are of the opinion that defendant was not under arrest when he climbed into the back of the Little Compton police cruiser while it was in Tiverton.

From the time of the initial conversation between the police officers and defendant until defendant failed the field-sobriety tests, defendant's freedom of movement was restricted only while he was seated in the back of the police cruiser, a period of a couple of minutes, according

to Harris. Without question, that restriction was due to the understandable configuration of the doors in the rear of the cruiser. The trial judge concluded that while he was in the back of the police cruiser, defendant was "unable to voluntarily exit th[e] police cruiser." Although defendant could not have opened the back door of the police cruiser himself, we have difficulty imagining how the two police officers could have transported defendant back to the scene without having him sit in the back of the police cruiser. It seems clear to us that defendant voluntarily entered the police cruiser and was let out of it as soon as the trio arrived at the scene of the accident. In Collins, 543 A.2d at 645, the defendant agreed to allow the police to transport him to his destination albeit "somewhat reluctan[tly]." This Court ultimately concluded that the defendant had not been under arrest even though he also could not voluntarily leave the police vehicle. Id. at 651. In this case, defendant did not convey that he had any reluctance whatsoever to accompany the police back to the accident scene. If anything, his agreement to return to the crash site by riding in the back of the police cruiser created the situation in which he could not exit the vehicle without assistance from the outside.

Moreover, although Harris conducted a pat-down of defendant for officer safety,[2] neither he nor Farrar employed any amount of physical force in the course of their interaction with defendant while they were in Tiverton. The defendant was not handcuffed when he was placed in the cruiser, no weapons were displayed, nor was he surrounded by a large number of uniformed police officers. See Collins, 543 A.2d at 651 (discussing that similar lack of physical restraint by police was indicative of no arrest). In Aponte, 800 A.2d at 426, this Court held that the defendant voluntarily accompanied the police, even accepting as accurate his testimony "that

---

[2] Such pat-downs are permitted by Terry v. Ohio, 392 U.S. 1 (1968). See State v. Duffy, 112 R.I. 276, 281, 308 A.2d 796, 799 (1973) (citing with favor federal Terry-pat standard), overruled on other grounds, State v. McGehearty, 121 R.I. 55, 394 A.2d 1348 (1978); see also State v. Taveras, 39 A.3d 638, 642 & n.6 (R.I. 2012).

he was frisked and physically manhandled by the officers as he was led to the police car and again into the station * * * ."

With respect to the consideration of whether defendant had the option of refusing to go with the police, the trial judge seems to have found it significant that the police did not inform defendant that he was free to leave. In State v. Girard, 799 A.2d 238, 248 (R.I. 2002), the defendant argued that the police had an affirmative duty to inform him that he was free to leave. This Court declined to find such a duty stating, "[a]lthough the police did not tell [the defendant] that he was free to leave; likewise, they never told him that he was not free to leave." Id. (citing Kryla, 742 A.2d at 1182). It is our opinion that the police were not obligated to inform Simmons that he was not required to accompany them.[3]

The final consideration is "whether a reasonable person would have understood that he was free to leave under like circumstances." Aponte, 800 A.2d at 426. The Fourth Amendment prohibition against unlawful seizures is in play "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." State v. Ferola, 518 A.2d 1339, 1343 (R.I. 1986) (quoting Immigration and Naturalization Service v. Delgado, 466 U.S. 210, 215 (1984)). This test is objective; a particular defendant's personal belief about whether he was free to leave is not material because "[t]he appropriate test is not what defendant thought but what a reasonable person would think in similar circumstances." Aponte, 800 A.2d at 426.

The hearing judge did not articulate whether or not she considered this aspect of the Bailey factors; however, we believe that the outcome of this case weighs heavily on its

---

[3] The trial judge also appears to have based her decision in part on the fact that the police did not observe defendant driving under the influence or fleeing from the scene of an accident. This fact, which seems more appropriate in a probable-cause analysis, is not relevant to our consideration of whether defendant was under arrest when he left Tiverton with the police.

determination. After he was patted down, Simmons inquired of the officers about the accident, asking what he had hit or if anyone had been hurt. Harris then responded by stating that she did not believe anyone had been hurt, but that "we needed to respond back to the scene." This exchange is critical to our review because the statement by Harris, under the circumstances of that morning, appears to indicate that defendant should return with them. Our jurisprudence contains cases in which we have held that if the police ask the defendant to come to the station with them, a reasonable person would feel free to decline. On the other hand, we have held that police action constituted an arrest when police employ language that made it clear that the defendant had no choice in the matter. Compare State v. Kennedy, 569 A.2d 4, 5-6 (R.I. 1990) (holding the defendant was not under arrest when police asked him to go to the station and then offered him a ride because he did not have transportation) with State v. Mattatall, 510 A.2d 947, 951-52 (R.I. 1986) (concluding that the defendant was not free to leave from the moment the police ordered him to go to the station because the defendant was given no opportunity to decline), vacated on other grounds, 479 U.S. 879 (1986), aff'd on other grounds, 525 A.2d 49 (R.I. 1987).

In light of our previous holdings, we conclude that Harris's statement was more like that in Kennedy than the one in Mattatall. The defendant did not express any reluctance after being asked to go with police, as occurred in Collins, but he instead exhibited a willingness to accompany the police. Also, defendant was released, unrestrained, from the cruiser upon arrival at the crash scene. See Aponte, 800 A.2d at 426 ("Significantly, [the] defendant was left alone without restraints in the unmarked police vehicle for at least five minutes.").

We are satisfied that a reasonable person under like circumstances would have felt free to leave when Harris stated that "we needed to respond back to the scene." After considering the

record in this case, viewed through the prism of the <u>Bailey</u> factors, we hold that the defendant was not arrested by the Little Compton police while they were in Tiverton.

### Conclusion

The judgment of the District Court is quashed. The papers in this case may be remanded to the District Court with our decision endorsed thereon.

Justice Robinson did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  State of Rhode Island ex rel. Town of Little Compton v. David Simmons.

**CASE NO:**  No. 2012-251-M.P.
(21-2011-3139)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  March 25, 2014

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**  District Court 2nd Division

**JUDGE FROM LOWER COURT:**

Associate Judge Colleen M. Hastings

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Thomas M. Bergeron, Esq.

For Defendant:  Robert H. Humphrey, Esq.